MARY S. CLAPP *vs.* ROWLAND B. LACEY AND OTHERS.

The act with regard to limited partnerships (Gen. Statutes, tit 49, Sec. 8.) provides that all advancements to the capital stock by special partners shall be in cash, and shall not be withdrawn during the period of the partnership, and that a special partner shall not under any circumstances be considered as a creditor or allowed to claim as a creditor in case of the insolvency or bankruptcy of the partnership. Held to mean that a special partner shall not be allowed to claim as a creditor any portion of the fund put in by him as capital, and not that he should be deprived of the rights of a creditor as to debts owed him by the partnership. [One judge dissenting.]

AMICABLE SUBMISSION to the Superior Court on an agreed statement of facts.

In 1863 a limited partnership was formed at Bridgeport in this state, under the name of Lacey, Meeker & Co., in which Stillman S. Clapp was a special partner, and the defendants were general partners. Clapp died in 1865 and the plaintiff was his executrix. The partnership expired by its own limitation on the 30th of June, 1868.

Clapp, as special partner, put into the firm as capital $50,000, in cash, complying in all respects with the requirements of the statute with regard to limited partnerships. At the time of his death the firm was indebted to him in the sum of $15,000 for money loaned, which has never been paid and is still due. At that time, and on the 30th day of June, 1868, the firm was and still is largely indebted to other general and outside creditors, and its assets and the assets of the general partners may be insufficient to pay the $15,000 due the plaintiff and the other debts in full. The plaintiff demands immediate payment of the $15,000. The defendants refuse to make such payment, upon the ground that the other debts are by law entitled to priority of payment, and that they are not by law liable to pay and have no legal right to pay the debt of the plaintiff until the other debts have been paid in full.

Upon these facts the case was reserved for the advice of this court.

*Loomis* and *Beardsley*, for the plaintiff.

*Treat*, and *A. P. Whitehead* of New York, for the defendants.

BUTLER J. We are all agreed that we must advise the Superior Court to determine the question which it is asked to decide in the negative. The case, as presented, does not find that the assets of the general partners are in fact insufficient to pay the debts of the partnership and that of Mrs. Clapp, and in the absence of such finding no sufficient reason for withholding payment from Mrs. Clapp appears.

In regard to the construction which should be given to the statute in cases where insolvency in fact exists, we are not all agreed. A majority of the court are of opinion that the last clause of the 8th section of the statute has reference to the capital advanced by the special partner, and not to a loan like that which constitutes the debt in question.

Our statute in relation to limited partnerships, and that of New York, were both passed in the year 1822. Both were taken in substance from the law of France and neither is a copy of the other ; they differ in their arrangement and some of their provisions. The law of New York was copied in New Jersey and Pennsylvania, and perhaps some other states. In New York, New Jersey and Pennsylvania the provision in question constitutes a separate section and is as follows : " In case of the insolvency or bankruptcy of the partnership, no special partner shall under any circumstances be allowed to claim as a creditor, until the claims of all the other creditors of the partnership shall be satisfied." In 1837 Chancellor Walworth in the case of *Mills* v. *Argall*, 6 Paige 577, held that section a bar to any claim for a debt by a special partner, until the claims of other creditors of the partnership were satisfied, and held an assignment preferring such a claim for that reason void. His opinion in that case

assumes that to be the true construction of the statute, without entering into any examination of it, or assigning any reason for it. The Superior Court of New York, in the case of *Hayes* v. *Bement*, 3 Sandf. Sup. Ct. R., 394, and the Supreme Court in the case of *Ward* v. *Newell*, 42 Barb., 482, and the Court of Appeals in the case of *White* v. *Hackett*, 20 New York, 178, followed the decision of the Chancellor, and the courts of Pennsylvania and Virginia have followed those of New York; but as our statute differs from the statutes of these states, the decisions taken together, although entitled to respect and perhaps justified by their statutes, are not satisfactory as authority for the construction of our own. Such a construction of the statute moreover was, and is, inconsistent with the interests of the commercial community, and the legislature of New York in 1857 amended their statute in that particular, and enacted that a special partner may "loan money to and advance and pay money for the partnership, and may take and hold the notes, drafts, acceptances and bonds of, or belonging to, the partnership as security for the repayment of such monies and interest, and may use and lend his name and credit as security for the partnership in any business thereof, and shall have the same rights and remedies in these respects as any other creditor may have;" thus preventing the evils which were found to follow the construction given to the statute by their courts. The legislature of Massachusetts adopted a law authorizing limited partnerships in 1835, and in view of the interests of the commercial community, wisely avoided the insertion of any section or clause like that of New York, simply providing that in case of insolvency the special partners should be held responsible for all sums by them in any way received, withdrawn or divided, so as to reduce the capital. And it seems probable that if we should follow the decisions which are urged upon our consideration, and give the same construction to our statute, we should go counter to the prevailing understanding of the profession and the community and render immediate corrective legislation necessary. Under such circumstances we feel it to be our duty to give the stat-

ute an independent and careful examination and construction.

In doing this we must, in the first place, dissent from the rule of construction claimed by the counsel for the general partners to be applicable to the case. The statute, in our judgment, is not in derogation of the common law, because limited partnerships are unknown to that law, but an enabling, enlarging and regulating statute, remedial in its character, and not therefore to be construed strictly as claimed. We discover nothing in its character, purpose or provisions requiring any other than an ordinary and reasonable construction.

Looking then to the statute as a whole, and its history, in connection with the then condition of the commercial law, we find a clear, general purpose and intent of the legislature to encourage trade by authorizing and permitting a capitalist to put his money into a partnership with general partners possessed of skill and business character only, without becoming a general partner, or hazarding anything in the business except . the capital originally subscribed. Such being the object and purpose for which the partnership was authorized, and the obvious general intent of the legislature, it seems to us to be in direct antagonism with that object and intent to make that capitalist a general partner as to any loans or advances other than the capital which he may make to the firm to assist them in their business or save them from bankruptcy during a period of stringency or panic, when solvent houses are prostrated unless aided by their friends.

Looking again and particularly at the provisions of the act, we find the same general intent particularly expressed in the second section, which contemplates and says, that "the liability of the special partner shall *extend no further than the funds or capital which he or they shall have furnished to the capital stock.*" But it is obvious that upon the construction claimed, the liability of the special partner will extend to and embrace all loans, advances, or other sums, for which the partnership may in good faith and for their best interests, in the course of their business, and independent of the capital stock, become indebted to him. Under that construction he

cannot rent a building to them in which to do their business, without having his liability as general partner extend to the rent.

Such being the general intent of the legislature clearly deducible from the history, object and purpose of the law, and the express language of the second section, and the construction claimed being antagonistic to it, we think it clear that it should not be adopted, unless necessarily and imperatively demanded by the language of the act; and we do not think such a construction is required. On the contrary, we think a different one, conforming to the obvious general intent of the law, in harmony with the language of the section in question.

The 8th section is as follows: " All advancements to the capital stock by the special partners shall be made in cash payments, and no part of the capital furnished by such partners shall be withdrawn, either in the shape of dividends, profits or otherwise, at any time within the period during which the partnership shall be continued, nor shall any special partner under any circumstances be considered as a creditor or allowed to claim as a creditor in case of the insolvency or bankruptcy of the partnership. " Now it is to be observed that the particular language relied on, namely, " nor shall any special partner, under any circumstances, be considered a creditor, or allowed to claim as a creditor in case of the insolvency or bankruptcy of the partnership, " is *part of a section*, and of a *single sentence* too, which relates expressly to the capital stock of the special partner, and contemplates three things, (viz,) 1st, that the capital stock shall be furnished by the special partner *in cash ;* 2nd, that it shall not be *withdrawn* directly or indirectly during the continuance of the partnership ; and 3rd, that as to that capital the special partner shall never be *considered as a creditor*, or allowed to claim as a creditor. So much is unquestionable. The language *does* apply to the capital stock and prohibit the special partner from being considered as a creditor as to that in the contingency named. Does it *necessarily* import more ? That is the point of the inquiry, and we think not. Moreover those

.words, " be considered as a creditor," are not in the laws of any of the states whose decisions have been cited, and preceding the words " allowed to claim as a creditor, " which obviously refer to the same subject-matter, are exceedingly significant of the intention of the legislature.

They are apt words to prohibit the consideration under any circumstances of the fund as a *debt* which is put in as *capital*, but are not apt or significant words except as they relate to something which is not a debt in fact, but which may be treated as such by the partners among themselves, and will be considered such on the winding up of the partnership, and say that it shall not be so considered under any circumstances till the debts are paid. A debt is a debt, and cannot be considered or treated as anything else ; the special capital could be treated by the partners as a debt, if not prohibited ; and thus read, a full and natural meaning is given the words, in harmony with the whole language of the section and sentence and with the purpose and intent of all the other provisions of the law, and not inconsistent with either. It is not enough that the language is sufficiently comprehensive to reach business debts ; for there is nothing else to show such an intent ; and they do refer to the capital.

And why, it may be asked, if the legislature intended what is claimed, did they not by some one of fifty conceivable and brief forms of expression say so ? The law was evidently prepared with great care. .It carries on its face a general intent, and. if the legislature intended it should contain a particular inconsistent intent, is it not reasonable to assume that they would have expressed that particular intent in apt and unmistakable words, and the law have contained some allusion to it as part of the intended object and purpose ? And if that particular intent was not originally and sufficiently expressed, is it reasonable to suppose that it would have passed through two or three thorough revisions and been left thus ambiguous and inconsistent with itself ? These questions carry their own answer with them.

Several reasons have been suggested which it is claimed may and should have influenced the legislature and justify the

construction claimed. But in our judgment they do not prove the particular intent claimed. And there is nothing whatever which will justify us in holding that the legislature intended to legislate in respect to the business contracts of the special partner with the firm, except the fact that the language used in respect to the special capital, if wrested from its connection, is broad enough to embrace other indebtedness. If there was anything else to show that the words were intended to be used in their broadest sense, and nothing to show the contrary, we might feel at liberty to take a different view of it.

In view of all these considerations, we think it is our duty to construe the clause in question as relating to funds furnished by the special partner as capital stock, and not to independent debts contracted with him as an individual in good faith and in the course of their business; and so we advise the Superior Court.

In this opinion HINMAN, C. J., and CARPENTER, J., concurred. PARK, J., dissented.