THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

FRITZ GRIESBACH.

211    35
e211   ³301
211    303

*Opinion filed June 23, 1904—Rehearing denied October 13, 1904.*

1. DRAM-SHOPS—*dram-shops are not, as a matter of law, injurious to neighboring real estate.* Courts will not declare, as matter of law, that dram-shops are prejudicial or injurious to neighboring real estate because of an ordinance requiring consent of a majority of the owners to an application for a license to keep a dram-shop.

2. SAME—*tenant in common may sign dram-shop petition for his proportionate interest.* Tenants in common may judge for themselves whether the keeping of a dram-shop in the vicinity of their property will be injurious, and each may sign a dram-shop petition as the representative of his proportionate interest in the property according to its frontage.

3. SAME—*minor cannot sign dram-shop petition.* A minor is not a competent person to sign a dram-shop petition as representing the frontage of the real estate owned by him.

4. SAME—*when a guardian's signature is in individual capacity.* A guardian's signature to a dram-shop petition will be considered as executed in her individual capacity, where she owns a dower interest in the property signed for and there is nothing indicating that she signed in her capacity as guardian.

*People v. Griesbach*, 112 Ill. App. 192, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

CHARLES S. DENEEN, State's Attorney, (CHURCH, MC-MURDY & SHERMAN, of counsel,) for appellant.

NICHOLAS MICHELS, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was an information in the nature of *quo warranto,* filed by the State's attorney of Cook county against the appellee, in which it was alleged that the appellee has usurped and unlawfully holds and exercises the privilege and license of keeping a dram-shop at and upon the

premises known as No. 5014 Cottage Grove avenue, in that part of the city of Chicago which formerly constituted the village of Hyde Park. The appellee pleaded that he held and exercised the privilege to keep the dram-shop at said premises by virtue of a license issued to him by the mayor of the city of Chicago, in compliance with the laws of the State of Illinois and the ordinances of the city of Chicago and the ordinances of the former village of Hyde Park, and that in order to become entitled to and obtain such license he procured and presented to the mayor of the said city an application signed by the owners of a majority of the property (according to frontage) on both sides of the four streets surrounding the block in which the dram-shop was to be and is kept, and also by a majority of the *bona fide* householders and persons and firms living in or doing business on each side of the street in the block upon which said dram-shop has its main entrance, as required by the ordinances of the former village of Hyde Park, which ordinances remained in full force after the annexation of the village of Hyde Park to the city of Chicago and still are in full force and effect. The plea made the application for the license a part thereof. The cause was, by stipulation of the parties, submitted to a jury for trial without further pleadings by either party, the stipulation providing that either party might prove any fact or raise any question of law which might be proved or raised under any other pleading which could properly have been presented in the cause.

It appeared upon the trial that it was necessary to a legal application for the license that the application therefor should bear the signatures of the owners of 2252.52 feet of property having its frontage on one or the other of the four streets surrounding the block on which the dram-shop was to be and is located, in accordance with the construction given the ordinance of the village of Hyde Park by this court in *People* v. *Harrison,*

195 Ill. 466. The application purported to contain the names of the owners of 2347.13 feet of such frontage, being an apparent excess of 94.16 feet over the requisite amount. Of the frontage so appearing on the application, 250 feet thereof was owned by five tenants in common, four, only, of whom signed the application. The trial court ruled the signatures of these four tenants in common should be accepted as representing 200 feet of the frontage of 250 feet owned by the five tenants in common. Counsel for the People contend that the signatures of tenants in common cannot be accepted as representing a proportionate part of the entire frontage of the common property.

It is true, as argued, that tenants in common are seized of each and every part of the estate, and that one of such tenants has no power to convey the whole of the estate or the whole of any distinct part or portion of it or to give a valid release for injuries done to it, and that one tenant in common cannot lawfully do any act that will work a permanent injury to the inheritance. But the argument that as a license to keep a dram-shop cannot, under the ordinance in question, be lawfully granted except upon the application and consent of a majority of the property owners, etc., it must be considered by the courts that the keeping of a dram-shop in the block is detrimental and injurious to the property abutting on the streets which surround the block, and that for that reason a tenant in common cannot be allowed to consent to that which must, as a matter of law, be considered to be injurious and detrimental to the common property, is not sound. The statutes provide for the presentation of petitions for the construction of local improvements by special taxation or special assessments, for the opening of highways, the creation of drainage districts and of towns under township organization, and perhaps for other objects and purposes. Petitions are not required in such cases for the reason that the objects to be at-

tained by the petition are to be deemed prejudicial or injurious in their nature, and therefore only to be granted in case those, or a portion of those, who will be prejudicially affected thereby shall signify their consent by way of a petition. Whether such objects are desirable and beneficial or prejudicial and detrimental are questions upon which the minds of those interested do not always agree, and the purpose of the provisions for petitions is to discover and give effect to the views and wishes of the greater number of those who are interested in the subject matter of the petition. The same is true as to the application for license to keep dram-shops, and courts will not declare, as matter of law, that dram-shops are prejudicial and injurious to real estate in the vicinity because the ordinance in question prohibits the issuing of licenses to keep such shops except upon the application of a majority of the owners of such real estate. The signing of such a petition by a tenant in common cannot be declared, as a matter of law, to be detrimental or injurious to the estate of himself and his co-tenants. Whether the establishment of a dram-shop in the block surrounded by the streets upon which the common property abuts is injurious or beneficial to the property is a question upon which each tenant in common has the right to judge for himself, and we think each of such tenants in common has the right to sign such a petition as the representative of his proportionate interest in the property according to the frontage thereof. If this were not true, any one tenant in common, no matter how small his interest, would be given, by law, the power to determine for his co-tenants, no matter how many there might be of them or how much greater their interests, whether the common property would be benefited or injured by the location of a dram-shop in the block. It seems to us a narrow and unreasonable view that one of the co-tenants should be allowed to control all other of the owners. That each one should be regarded as a qualified petitioner for the

proportionate part owned by him is the more just and the more reasonable conclusion.

Charles Nottbohm was the owner of a lot having a frontage of 214.34 feet on the block in which the dramshop to be licensed was located. He was a minor, being of the age of about seventeen years. He signed the application for the license which issued to the appellee. The name of Mathilda Nottbohm also appeared on the application. She was the guardian of Charles, but did not purport to sign the application in that capacity. She was entitled to the right of dower in the premises, and her signature, being in her individual capacity, is to be regarded as having been placed there to signify that she consented in her individual capacity, as the owner of the right to dower in the premises. It must then be determined whether the said Charles Nottbohm, being a minor, could lawfully sign the application and give such signature legal effect as the owner of real estate having its frontage on the streets of the block in which the dram-shop was to be established.

We do not think a minor can be regarded as a qualified petitioner on the application of the appellee for the license to keep a dram-shop. Statutes regulating or prohibiting the sale of intoxicating drinks have been sustained as constitutional enactments on the ground they were adopted, in virtue of the police power, for the prevention of intemperance, pauperism and crime, and for the protection of society and the health, morals and safety of the community against the evils that, in the view of the law-making body, follow the unrestricted sales, at retail, of intoxicating liquors and the consequent abuse of the use of such drinks. (*Schwuchow* v. *City of Chicago*, 68 Ill. 444; *Dennehy* v. *City of Chicago*, 120 id. 627; *People* v. *Cregier*, 138 id. 401; *Crowley* v. *Christensen*, 137 U. S. 86; 17 Am. & Eng. Ency. of Law,—2d ed.—206, 207; *State* v. *Turner*, 18 S. C. 103.) The provisions in statutes and ordinances requiring the consent or recommendation

of designated persons in the vicinity of the place where a license to sell intoxicating liquors is desired to be authorized have uniformly been held to be valid. (*City of Chicago* v. *Stratton*, 162 Ill. 494; *Swift* v. *People*, 162 id. 534; 17 Am. & Eng. Ency. of Law,—2d ed.—211.) Such provisions are in recognition of the legislative view that the peace, good morals, order and safety of the community may be affected by the grant of a license to sell intoxicating liquors, and that the general public in the vicinity of the place of the proposed establishment of a dram-shop are for that reason interested in the question whether a license therefor shall be granted or refused. Those persons who are invested by such statutes or ordinances with the power to endorse or refuse to endorse the application for a license to keep a dram-shop are charged, in a degree, with a duty to the public. The determination of the propriety of signing or refusing to sign such an application demands consideration not only of the views and interests of the person so having legal qualifications to join in the application, but also the consideration of the rights and interests of third persons and of the general public in the vicinity. The action to be taken is not wholly in his private and personal capacity, but he must act to some extent in a public capacity. He is entrusted with a power the exercise whereof concerns the welfare of the public, and he therefore has a duty to discharge to his neighbors and other members of the community whose interests, rights, morals and safety are concerned and may be affected by his act. This principle was announced in *Doane* v. *Chicago City Railway Co.* 160 Ill. 22, and was there applied, it being held that under an ordinance of the city of Chicago providing that authority from the city council to lay the tracks of a street railway in a public street of the city and operate a street railway thereon could only be granted by obtaining the consent of certain of the owners of property abutting on such street, the owner of such abutting

property in giving or refusing consent was to a certain extent the representative of the public and exercising a duty to the public, and could not be allowed to make the granting or refusing of the consent a matter of bargain and sale for his individual benefit. It was there declared the owners of such abutting property occupied a position of trust towards the public, and that sound public policy required they should exercise the power invested in them out of consideration of the public welfare.

The persons authorized by the ordinances of the village of Hyde Park to sign the application of appellee for a license to keep the dram-shop in that matter stand for and represent the public, whose interests, rights and welfare, moral and material, are concerned in the granting or refusal of the application. They occupy a position of trust toward the public, and the proper discharge of their duty to the public demands the consideration of the interests of all who are to be affected and the exercise of matured judgment and discretion. A person wanting in mental power to meet the requirements of the duty to the public could not be regarded as a competent applicant. A person who is so affected with insanity as to be irresponsible for his action in the ordinary affairs of life would not be competent to sign an application, although he be the owner of property abutting on the streets in the block whereon the dram-shop was to be located. The said Charles Nottbohm, at the time he signed the application, had not reached the age which, in law, is deemed essential to the maturity of the mental faculties. The law did not regard him as possessed of the requisite maturity of mind and soundness of judgment to act in his individual capacity with reference to public and private affairs. He was regarded by our lawmakers as particularly incompetent to comprehend the evils likely to result from the use to himself of intoxicating liquors. The statutes adopted by the General Assembly hold him not competent to determine for him-

self whether and when he shall indulge in intoxicating liquors, and require that persons licensed to sell such liquors at retail shall not sell or give the same to him unless his parents, guardian or family physician shall first determine that he should be permitted to receive it. (Starr & Cur. Stat. 1896, chap. 43, sec. 6, p. 1590; *Hamer* v. *People*, 205 Ill. 570.) Being incompetent, by the express provisions of the law, to decide whether he may drink intoxicating liquors or not, because of the immaturity of his mind and judgment, it must be held he is in a far greater degree incompetent to decide for himself, and as a representative of the public, whether or not a dram-shop should be permitted to be established and operated by the appellee. He has the qualification of a property owner, but is under the disqualification of nonage and consequent immaturity of his mental powers, in legal contemplation. The Supreme Court of the State of Nebraska, in *Thompson* v. *Egan*, 97 N. W. Rep. 247, held a minor not competent to sign an application for the issuance of license to a dram-shop keeper. Such is the correct view. The property of which he was the owner has an abutting frontage of 214.34 feet. He was not a competent petitioner, and the frontage of his property must be deducted from the total frontage of 2347.13 feet represented on the application of the appellee for the license. The total frontage remaining after such deduction is 2132.79 feet. It appeared from the facts stipulated by the parties that 2252.52 feet frontage is essential to a good application. The application was therefore fatally insufficient to warrant the issuance of the license to the appellee. The license, therefore, did not confer on appellee the right to keep the dram-shop in question, and the court erred in denying the prayer of the petition.

The judgment of the circuit court and that of the Appellate Court are each reversed, and the cause will be remanded to the circuit court for such other and further proceedings as to law and justice shall appertain.

*Reversed and remanded.*