RICARDO R. MORGAN vs. JOSEPH SIGAL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 9th—decided December 15th, 1931.

*John T. Robinson,* with whom was *Isidor E. Finkel-stein,* for the appellant (defendant).

*George C. Morgan,* for the appellee (plaintiff).

AVERY, J. The general situation of the properties involved in this suit is described in *Armstrong* v. *Leverone,* 105 Conn. 464, 136 Atl. 71, and need not be repeated. The same strip of land is involved as in that case, being the so-called "reserved strip" at Ocean Beach, New London, consisting of fifty twenty-five foot lots and one fifty foot lot. The defendant was the owner of lot No. 50, the most westerly one on the tract. The plaintiff is the owner of Lot No. 21 in the "reserved strip," he having acquired title thereto from Henry C. Chappell by quitclaim deed dated June 25th, 1928, and recorded June 26th of that year, the same

day on which the writ in the present action was dated. Prior to May 28th, 1928, the defendant had secured written consent of the owners of sundry lots in the "reserved strip" for the maintenance of a store upon Lot No. 50. The consent was qualified by the restriction that no right was thereby given to maintain a store on that part of the tract "fronting on the Beach." Ever since May, 1928, and up to the time of the permanent injunction of the present action, during the season, the defendant either personally or, subsequent to his losing the property by foreclosure, through a corporation organized by him for that purpose, has used Lot No. 50 for store purposes. The principal questions involved in this appeal are: first, whether the defendant had secured the consent "of the owners of three quarters of the lots on said strip" for the erection of his store; and, second, whether the plaintiff, as grantee from Henry C. Chappell, can maintain this action, or is estopped from doing so by the fact that Henry C. Chappell, the plaintiff's immediate predecessor in title, some time prior to May, 1928, and prior to conveying his title to the plaintiff, had signed, with other lot owners, the restricted consent.

It was stipulated by the parties at the trial that the consent of the owners of seven of the lots had never been obtained in any manner. It was further stipulated that in addition to the above seven lots, three lots stood in the name of Louis Markow, Inc., which the court finds was a legal corporation under the laws of the State of Connecticut; and that no consent to the defendant's conducting a store on his lot had been signed by any owner of these three lots. While president of the corporation, and while it was the owner of those lots, Louis Markow, as an individual, signed the consent to the erection of a store not fronting on the beach. The trial court correctly concluded that

the consent signed by Louis Markow as an individual, was ineffective as a consent under the covenant.* "The property of a corporation is not subject to the control of individual members, whether acting separately or jointly." *Humphreys* v. *McKissock,* 140 U. S. 304, 312, 11 Sup. Ct. 779, 781; *Smith* v. *Hurd,* 53 Mass. (12 Metc.) 371, 385. Nor will the title of the corporation pass under a deed executed by a stockholder as such. 14A Corpus Juris, 531; *Wheelock* v. *Moulton,* 15 Vt. 519, 522.

The court further finds that at the time of the trial and for a long time prior thereto, two of the lots had been jointly owned by Philip Hendel and William Weiner, spoken of in the finding as a partnership; that a single cottage stood on the combined plot comprising these lots; that Hendel, as the resident member of this partnership, had active charge of renting the property; that he signed the consent to the erection of the store not fronting on the beach—"Philip J. Hendel;" that in so signing, Hendel did not profess to be acting for his co-owner, Weiner; that Hendel had no authority so to act and did not so act in fact; that some time subsequently Weiner had been requested to sign but took no action with relation

---

* The covenant is set forth in *Armstrong* v. *Leverone,* 105 Conn. 464, 466, 136 Atl. 71, and is appended hereto for convenience: "This conveyance is made, given and received upon the condition that there shall not be erected or maintained, without the consent of the owners of three quarters of the lots on said strip, any building or part of a building within ten (10) feet of the southerly or northerly side of the land herein conveyed, or any building costing less than three hundred and fifty (350) dollars, or any building to be used as a public bath house, store, restaurant, saloon, or for any other public purpose, or any building or shed to be used for horses provided the grantors hereof furnish at a cost of five dollars a year, a suitable shed for the shelter of horses and carriages for each of the owners of lots on the strip aforesaid, who may desire such accommodations."

thereto; that Weiner always has lived outside of this State; and the court concluded that such signature by Hendel in no event comprised more than the consent of the owner of one lot. "At common law partners are tenants in common in firm real estate, and since one tenant in common cannot convey the estate of his cotenant, and since land cannot be conveyed except by deed, the general rule necessarily follows that one partner cannot without the concurrence of his copartners, either convey away the real estate of the partnership, or bind his partners by a deed, or transfer the title and interest of his copartners in the firm real estate." 20 R. C. L. 905; 47 Corpus Juris, 854. A partner's unauthorized conveyance of firm realty is binding as to his own interest; 47 Corpus Juris, 855; subject, however, to the partnership equities. *Goodwin* v. *Richardson,* 11 Mass. 469, 472; *Dyer* v. *Morse,* 28 L. R. A. 89, 95, note (10 Wash. 492). We hold, therefore, that the consent signed by Philip J. Hendel was one pertaining to an undivided half-interest in each of the lots, subject to the partnership equities; and that the consent of "the owners" of either of these lots was not obtained, as provided in the covenant. The wording of the covenant in this case, requiring "consent of the owners of three quarters of the lots on said strip," shows a manifest intention on the part of the Post Hill Improvement Company, the original owner of all the lots, to make the lots the basis of the consents, and required the consents, to be effective, to be by the owners of three quarters of the lots rather than three quarters of the lot owners. The language of the covenant clearly distinguishes this case from such a situation as arose in *People* v. *Griesbach,* 211 Ill. 35, 71 N. E. 874, 875. In that case, an ordinance of Hyde Park required an application for a liquor license to be signed by the owners of the major-

ity of the property [according to frontage] on both sides of the four streets surrounding the property upon which the saloon was to be; and in that case, under the language of the ordinance, it was held unnecessary that all tenants in common of a parcel of property should sign, but the signature of a part of them was valid as to such proportion of the frontage as the number of tenants signing bore to the whole number.

No consent was ever had from any owner of record of the Leverone lot; and no consent was obtained by the defendant as to the lot owned by Walter Lewis until February 10th, 1931, five days after the trial of the case was begun. One consent, previously obtained, was withdrawn in June, 1928, the day after the writ was dated. The provisions of the deed created a restriction upon the use of each lot which was terminable as to any lot in a certain contingency; that is, the securing of the consent of the owners of three quarters of the lots in the reserved strip. The consent of a single lot owner, or of any number less than the required three fourths, would be wholly ineffective either to permit the erection or maintenance of a forbidden building or the carrying on of a forbidden use, or to end the right of any lot owner to require obedience to the restriction. It would be but an offer upon the part of anyone giving such consent to permit the abrogation of the restriction, which would give rise to a right in the one to whom it was given only when consent of three quarters of the lot owners had been obtained. Until then, it would be necessarily revocable.

A use of any lot forbidden by the provision in the deed cannot lawfully be made unless, at the time it is undertaken, the owner of the lot has secured the consent of three quarters of the lot owners. This must

necessarily mean of three quarters of those who then owned the lots. Any consent secured, being in itself ineffective, would not naturally go upon the land records until the necessary three fourths had been obtained. If the effort to secure them should extend over a number of years, as it might well do, then the lots might be transferred and retransferred, and the purchasers of them might well buy with every expectation from the land records that these restrictions would continue in force. To construe the covenant otherwise than as requiring the consent of those who owned lots at the time when a forbidden use was undertaken would be very seriously to impair our doctrine of the necessity of recording rights in land.

The defendant had no right to expend money for improvements for business purposes until he had obtained the required number of consents; and so spending money would not operate as an estoppel against the plaintiff. Until the defendant had the right to rely upon the consents, his acting thereon was upon his own responsibility. Estoppel " 'does not extend to acts or representations not naturally calculated to mislead, and on which others have no right to rely.' " *Goldberg* v. *Parker*, 87 Conn. 99, 107, 87 Atl. 555.

It thus appears that at no time did the defendant have the consents "of the owners of three quarters of the lots" to the maintenance of his store. Three quarters of fifty-one is thirty-eight and one quarter. Before the action was instituted, he had the consents of the owners of thirty-seven of the lots; at the time the action was commenced, he had the consents of thirty-six lots only; he lost one and gained one up to the conclusion of the trial. It can, then, in no way be calculated that the defendant at any time had obtained "the consent of the owners of three quarters

of the lots" to the maintenance of his store, as required by the covenant.

There is no error.

In this opinion the other judges concurred.