### THE FIDELITY TRUST COMPANY *v.* BVD ASSOCIATES ET AL.
### (11779)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued February 14—decision released May 14, 1985

*John Wayne Fox,* with whom were *Frederick M. Tobin* and, on the brief, *Susan L. Stratton,* for the appellant (plaintiff).

*Douglas Shrader,* with whom, on the brief, were *Lawrence W. Kanaga* and *Robert A. Harris,* for the appellee (named defendant).

PARSKEY, J. This case, which is one of first impression, raises the question of whether, in the case of a limited partnership, a due on sale clause in a mortgage is triggered by the replacement of any or all of the original general and limited partners.

The named defendant, BVD Associates (hereinafter the defendant), a Connecticut limited partnership, is the owner of certain real property in the city of Stamford. On November 22, 1977, the defendant mortgaged this property to the plaintiff for $850,000. The mortgage deed contained the following acceleration clause: "[t]hat the whole of the indebtedness, both principal and interest, shall become due and payable at the option of the holder hereof upon the sale or conveyance of the said premises or any part thereof. . . ." The plaintiff, claiming to invoke its rights under the acceleration clause, brought an action to foreclose the mortgage.

Both parties filed motions for summary judgment. The trial court granted the defendant's motion and the plaintiff has appealed. We find no error.

At the time of its formation on November 22, 1977, the defendant firm consisted of four general and twenty limited partners (Group I). In December, 1977, two additional limited partners (hereinafter included within Group I limited partners) were admitted upon the consent of all Group I general and limited partners. On July 31, 1980, all Group I general and limited partners consented in writing to the admission of Alan Senie as a general partner. Senie's admission as a general partner on July 31, 1980, is recited in an amendment to the defendant's certificate of limited partnership which was filed with the town clerk of Stamford on September 19, 1980, at 3:09 p.m. On September 12, 1980, all of the original Group I general and limited partners transferred their interests in the partnership to Senie and withdrew as general and limited partners respectively. On the same date ten new limited partners (Group II limited partners) and two additional general partners (referred to, along with Senie, as Group II general partners) were admitted. These changes in partnership members are recited in an amendment to the defendant's certificate of limited partnership which was filed with the town clerk of Stamford on September 19, 1980, at 3:10 p.m. The plaintiff argues that by virtue of the events occurring on July 31, 1980, through September 19, 1980, the original limited partnership has been dissolved and a sale or conveyance of the mortgaged property has resulted. We do not agree.

In its brief on appeal, the plaintiff argues that: (1) the withdrawal of the Group I partners did not fall within either of the statutory exceptions to the rule that a limited partnership is dissolved upon "an event of withdrawal of a general partner"; General Statutes § 34-28a (3); (2) the trial court, in deciding that no dis-

solution occurred, erroneously "assigned to the limited partnership the legal attributes of a corporation"; and (3) the transfer of the mortgaged property from the Group I to the Group II partners constituted a sale of the premises by virtue of the doctrine of equitable conversion.

A brief review of the history of partnership law is helpful to our discussion of the plaintiff's arguments. At common law a partnership was generally regarded as an aggregate of individuals. *Abbott* v. *Anderson,* 265 Ill. 285, 290, 106 N.E. 782 (1914); *Hughes* v. *Gross,* 166 Mass. 61, 65, 43 N.E. 1031 (1896). Because the partnership was not regarded as a legal entity it could not take or hold title to real estate in the firm name. *Riddle* v. *Whitehill,* 135 U.S. 621, 633–34, 10 S. Ct. 924, 34 L. Ed. 282 (1890); *Hurst* v. *Hurst,* 95 Or. 563, 569, 188 P. 182 (1920). At common law, partners were tenants in common of firm real estate. *Morgan* v. *Sigal,* 114 Conn. 39, 43, 157 A. 412 (1931). Any change in the personnel of the partnership, whether by the death, admission or withdrawal of a partner, would dissolve the partnership by operation of law. *Karrick* v. *Hannaman,* 168 U.S. 328, 334–35, 18 S. Ct. 135, 42 L. Ed. 484 (1897) (withdrawal); *Pitkin* v. *Pitkin,* 7 Conn. 306, 314 (1829) (death); *Ellingson* v. *Walsh, O'Connor & Barneson,* 15 Cal. 2d 673, 676, 104 P.2d 507 (1940) (admission).

The Uniform Partnership Act (UPA); General Statutes §§ 34-39 through 34-81; made a number of changes in the common law of partnerships. In its formative stages the UPA treated a general partnership as a legal entity, but as subsequently drafted the act substantially adopted the common law aggregate theory, although it did recognize a partnership as a legal entity for some purposes. 1 Rowley, Partnerships (2d Ed. 1960) § 1.3, p. 22. General Statutes § 34-46 (3), for example, authorizes the acquisition of real estate in the partnership

name. Nonetheless, General Statutes § 34-67 still provides for dissolution of the partnership in any case where a change in the relation of the partners is caused by any partner ceasing to be associated in the carrying on of the business.

The limited partnership is not a product of the common law. "Limited partnerships were first known and recognized in the Italian commercial centers of Pisa and Florence in the twelfth century, as a means for the owners of wealth, primarily the nobles and clergy, to invest their capital without being known or named." 2 Rowley, Partnerships (2d Ed. 1960) § 53.0, p. 550. Because it was unknown to the common law, the limited partnership has been regarded as a creature of statute. In construing an early limited partnership statute we stated: "[W]e find a clear, general purpose and intent of the legislature to encourage trade by authorizing and permitting a capitalist to put his money into a partnership with general partners possessed of skill and business character only, without becoming a general partner, or hazarding anything in the business except the capital originally subscribed." *Clapp* v. *Lacey,* 35 Conn. 463, 466 (1868).

Under the Uniform Limited Partnership Act (ULPA); General Statutes §§ 34-9 through 34-38*o*; as originally enacted and until its 1979 amendments, there was very little substantive difference between the UPA and the ULPA regarding general and limited partnerships, except with respect to the liability of limited partners. Under General Statutes § 34-44, the UPA applies to limited partnerships except insofar as the ULPA is inconsistent therewith. General Statutes § 34-46, for example, which permits the acquisition of real property in the partnership name, applies to both general and limited partnerships. A distinction was drawn between the two types of partnership, however, with respect to dissolution. Under General Statutes § 34-67

the "dissolution of a [general] partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." This section provided that the withdrawal of a partner would cause a dissolution of the general partnership by operation of law. Under General Statutes § 34-28 as originally enacted, however, the withdrawal of a general partner would dissolve a limited partnership "unless the business is continued by the remaining general partners (a) under a right so to do stated in the certificate or (b) with the consent of all members." As we shall discuss, the statutory provisions authorizing a limited partnership to acquire and hold title to real property and permitting that partnership to continue even after a change of membership, work a fundamental change in the nature of the partnership. At least for this limited purpose, the partnership begins to take on the coloration of a legal entity.

In 1979 the General Assembly expanded the circumstances in which a limited partnership could continue upon the withdrawal of a partner. In Public Acts 1979, No. 79-440 (now General Statutes § 34-28a [3]), it provided for the dissolution of the partnership in the "event of withdrawal of a general partner unless at the time there is at least one other general partner and the certificate of limited partnership permits the business of the limited partnership to be carried on by the remaining general partner and that partner does so, but the limited partnership is not dissolved and is not required to be wound up by reason of any event of withdrawal, if, within ninety days after the withdrawal, all partners agree in writing to continue the business of the limited partnership and to the appointment of one or more additional partners if necessary or desired." In explaining the proposed changes in the ULPA to the House of Representatives, Representative Richard

Tulisano, chairman of the judiciary committee, remarked: "In many ways the limited partnership will be treated in some ways as entities like corporations rather than as individuals." 22 H. R. Proc., Pt. 28, 1979 Sess., p. 9827. With this historical background in mind, we now review the plaintiff's arguments.

I

First we consider whether the various transactions between the Group I and Group II partners resulted in a dissolution of the original partnership, formed November 22, 1977, and the creation of a new one, as of September 12, 1980 (the date of withdrawal of the Group I partners), bearing the same name. For this purpose we assume, without deciding, that a dissolution of the partnership is sufficient to trigger the due on sale provision contained in the mortgage deed, regardless of whether there is a formal conveyance of title to the new partnership.

General Statutes § 34-28a provides that a limited partnership is dissolved in the event of the withdrawal of a general partner "unless at the time there is at least one other general partner and the certificate of limited partnership permits the business of the limited partnership to be carried on by the remaining general partner and that partner does so, but the limited partnership is not dissolved . . . by reason of any event of withdrawal, if, within ninety days after the withdrawal, all partners agree in writing to continue the business of the limited partnership and to the appointment of one or more additional general partners if necessary or desired." Because the facts of the present case bring it within the first statutory exception, we need not consider whether the second exception has also been satisfied.

On September 12, 1980, all of the Group I general partners transferred all of their interest in the partnership to Alan Senie and withdrew as general partners. Therefore, the only person who could qualify as a "remaining general partner" within the meaning of General Statutes § 34-28a would be Senie. The parties disagree as to when Senie was admitted as a general partner. The defendant contends that this event occurred on July 31, 1980, by which date all of the Group I partners had signed the agreement admitting him as an additional general partner. We agree with the defendant. General Statutes § 34-17a provides: "After the filing of a limited partnership's original certificate of limited partnership, additional general partners may be admitted only with the specific written consent of each partner." Since all of the Group I partners had in fact signed and acknowledged their consent to the admission of Senie as a general partner by July 31, 1980, under General Statutes § 34-17a Senie was admitted as a general partner in the defendant partnership as of that date.

The plaintiff contends that under the mandatory provisions of General Statutes § 34-32[1] Senie could not

---

[1] "[General Statutes] Sec. 34-32. AMENDMENT OF CERTIFICATE. (a) A certificate of limited partnership shall be amended by filing a certificate of amendment thereto in the office of the secretary of the state. The certificate shall set forth:

"(1) The name of the limited partnership;

"(2) The date of filing the certificate; and

"(3) The amendment to the certificate.

"(b) Within thirty days after the happening of any of the following events, an amendment to a certificate of limited partnership reflecting the occurrence of the event or events shall be filed:

"(1) A change in the amount or character of the contribution of any partner, or in any party's obligation to make a contribution;

"(2) The admission of a new partner;

"(3) The withdrawal of a partner; or

"(4) The continuation of the business under section 34-28a after an event of withdrawal of a general partner.

"(c) A general partner who becomes aware that any statement in a certificate of limited partnership was false when made or that any arrange-

become a partner until the amendment to the partnership certificate was filed with the secretary of the state. We do not agree. General Statutes § 34-32 (b) provides that an amendment to the partnership certificate shall be filed within thirty days after the admission of a new partner. Although the language of the statute would itself suggest that the admission would occur before the filing, we conclude in any event that the time requirements of the statute are directory rather than mandatory. The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345 (1951). If it is a matter of substance, the statutory provision is mandatory. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591 (1963). If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789 (1956). "Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75 (1969).

---

ments or other facts described have changed, making the certificate inaccurate in any respect, shall promptly amend the certificate, but an amendment to show a change of address of a limited partner need be filed only once every twelve months.

"(d) A certificate of limited partnership may be amended at any time for any other proper purpose the general partners determine.

"(e) No person has any liability because an amendment to a certificate of limited partnership has not been filed to reflect the occurrence of any event referred to in subsection (b) of this section if the amendment is filed within the thirty-day period specified in subsection (b)."

A comparison of the provisions relating to the admission of a limited partner with General Statutes § 34-17a, concerning the admission of a general partner, is instructive. General Statutes § 34-16 (b) provides that a person acquiring a partnership interest becomes a limited partner only upon amendment of the partnership certificate. General Statutes § 34-32 (a) provides that a partnership certificate shall be amended by filing a certificate of amendment with the secretary of the state. Thus a person becomes a limited partner only as of the time of filing. This provision protects creditors by precluding a general partner from becoming a limited partner prior to filing and thus limiting his liability by secret agreement. Where someone becomes a general partner, no such concern is apparent. Accordingly, there is no requirement in General Statutes § 34-17a that the certificate be amended before an individual can become a general partner. This differing treatment is logical since a creditor could hardly complain were he to discover that the assets of a new general partner were available to him to secure his debt.

Since Senie's admission as a general partner occurred before the withdrawal of the Group I general partners, he was a "remaining general partner" within the meaning of General Statutes § 34-28a. The purpose of this statute is to permit the continuation of the partnership as an entity under certain conditions so long as proper steps are taken in the proper order. The prescribed procedure is meant to ensure that there is a continuity of general partners. Once continuity is assured, as it was in this case, the statute is satisfied.

## II

We next consider whether a limited partnership is a distinct legal entity separate from its partners. The plaintiff claims that whatever recognition is given to

the entity theory under the UPA is merely for procedural or conveyancing purposes and therefore should not be regarded as producing a substantive change in the common law, under which a partnership was viewed as an aggregate of individuals. In light of the historical background of the UPA, we find this proposition hard to accept. Dean James Barr Ames, the principal drafter of the early drafts of the UPA, would have defined a partnership as "a legal person formed by the association of two or more individuals for the purpose of carrying on a business with a view to profit." UPA 161 (Tent. Draft No. 2, 1909). When he died he was replaced by Dean William Draper Lewis, an advocate of the "aggregate" theory. The UPA as finally drafted, however, combined aspects of both the aggregate and entity theories. Roegge, Talbot & Zinman, "Real Estate Equity Investments and the Institutional Lender: Nothing Ventured, Nothing Gained," 39 Fordham L. Rev. 579, 608–609 (1971). The issue before us is not whether the partnership is a legal entity for all purposes, but rather whether it is a legal entity for the purpose involved in this case.

As previously stated, a limited partnership is a creature of statute. Thus, to determine whether a limited partnership is to be considered a legal entity for a particular purpose, an examination of the pertinent statutory provisions is required. The United States Supreme Court adopted a similar approach in *Puerto Rico* v. *Russell & Co.,* 288 U.S. 476, 53 S. Ct. 447, 77 L. Ed. 903 (1933), where it considered whether a sociedad en comandita organized under the laws of Puerto Rico was a judicial entity in order to determine the existence of diversity of citizenship. While the court recognized that "[t]he tradition of the common law is to treat as legal persons only incorporated groups and to assimilate all others to partnerships"; id., 480; it nevertheless concluded, upon examination of the relevant statutes, that

"[i]n the law of its creation the sociedad is consistently regarded as a juridical person." Id., 481. Among the factors which the Supreme Court regarded as significant in reaching this conclusion were the right of the sociedad to own property, transact business and sue and be sued in its own name; its creation by articles of association filed as public records; and its continuation despite the death or withdrawal of individual members. Id.

Similarly, under Connecticut law, a limited partnership is created by the public filing of a certificate of limited partnership; General Statutes § 34-10; it can acquire property in the partnership name; General Statutes §§ 34-46 (3) and 34-44 (2); and, under certain circumstances, it may continue despite the withdrawal of a general partner. General Statutes § 34-28a. The existence of these factors is sufficient in our judgment to warrant treating a limited partnership as a legal entity, at least for the limited purpose of determining on the facts of this case that a change of membership occasioned by the withdrawal of general partners is not sufficient to trigger the due on sale clause in the plaintiff's mortgage.

### III

Finally, the plaintiff argues that the transfer by the Group I partners of their interests in the partnership to the Group II partners constituted a sale of the premises by virtue of the doctrine of equitable conversion. There is no occasion to apply the principle of equitable conversion to the facts of this case. Equitable conversion is defined as "[t]he exchange of property from real to personal or from personal to real, which takes place under some circumstances in the consideration of the law, such as, to give effect to directions in a will or settlement, or to stipulations in a contract, although no such change has actually taken place, and by which

exchange the property so dealt with becomes invested with the properties and attributes of that into which it is supposed to have been converted." Black's Law Dictionary (5th Ed.). "Under the doctrine of equitable conversion a contract for the sale of land vests equitable title in the vendee." *Lanna* v. *Greene,* 175 Conn. 453, 461, 399 A.2d 837 (1978). Under § 34-64 "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." A transfer of that interest from one individual to another does not convert it from personal to real property.

In this case, the subject property was conveyed to the defendant in the partnership name, and the defendant has retained ownership to the present time. The partnership has never attempted to transfer either legal title or equitable interest in the property. All that has occurred is the admission of new partners and withdrawal of former partners, without effecting a dissolution of the partnership, in accordance with statute. Had the plaintiff desired, it could have required individual partners to be named in the mortgage note, or provided that any change in the membership of the defendant partnership would trigger the acceleration clause. "Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement; contracts voluntarily and fairly made should be held valid and enforced in the courts." *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 22, 420 A.2d 1142 (1979). Nothing has occurred here to accelerate the note under the terms of the mortgage.

There is no error.

In this opinion the other judges concurred.