[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action to quiet title to a parcel of land in Newtown and to void an easement over the property. The plaintiffs acquired the parcel at issue by warranty deed, dated January 28, 1999, and recorded on June 29, 1999, in the Newtown land records, from Toll Land XVII Limited Partnership (Toll Land). This property is a portion of land previously owned by William Horrigan, Jr., Associates (Horrigan Associates), which was a general partnership. The principals of Horrigan Associates included William Horrigan, Jr., Frank Healy, David Thorne, Arthur Emil and Arthur Collins. The partnership owned real property, including the property now CT Page 12158 owned by the plaintiffs, totaling approximately 600 acres of land. On October 23, 1978, all five partners of Horrigan Associates executed an amended and restated limited partnership agreement. Pursuant to its terms, the agreement changed the name of the partnership from William Horrigan, Jr. Associates to Newtown Associates, and provided that three of the partners, Horrigan, Healy and Thorne, would hold their interest in the partnership as limited partners, each having a three and one-third percent interest. On October 23, 1978, the principals filed a certificate of limited partnership on the Newtown land records indicating the conversion and reconstitution of Horrigan Associates from a general partnership to a limited partnership. Also, on the same date, Arthur Collins and Arthur Emil, as general partners, and William Horrigan, Jr., Frank A. Healy, and David H. Thorne, as limited partners, executed a certificate of limited partnership of Newtown Associates which was also recorded in the Newtown land records. There was no deed executed or filed with the Newtown land records transferring the real property owned by Horrigan Associates to Newtown Associates. The sole issue in the present case is whether a deed was necessary. After the execution of the amended and restated partnership documents of Newtown Associates, the partnership sold a portion of the original parcel to Greenleaf Associates, which Greenleaf Associates sold to CTP, Inc., which quitclaimed its interest to Cavalier and Sons, Inc., which sold its remaining interest to defendant, Toll Land.
By deed dated January 28, 1999, Toll Land conveyed to the property to the plaintiffs. Prior to this conveyance, Toll Land granted a horse trail easement to the defendant, Newtown Bridle Lands Association, Inc. (Bridle Lands), dated July 1, 1997. The easement from Toll Land to Bridle Lands over a portion of the plaintiffs' property replaced a previous easement from Cavalier and Sons, Inc. to Bridle Lands dated December 9, 1993. Both easements were recorded in the Newtown land records. The effect of these transactions was to place the horse trail easement on the plaintiffs' property, and, as such, the plaintiffs were aware of the existence of the recorded easement prior to contracting to purchase the property. Thus, all of the plaintiffs were on record and actual notice that the horse trail easement crossed over their properties on or before the date of conveyance to them. The deed to the plaintiffs from Toll Land conveyed the properties subject to the easement to Newtown Bridle.
A prior case involving the same issue of lack of a deed from Horrigan Associates to Newtown Associates as to another parcel in the same subdivision, Cavanaugh v. William Horrigan Jr. Associates. et al., filed in this court, Docket No. CV98-0332531, involving all the same defendants other than Bridle Lands, quieted title as between the parties involved in the Cavanaugh property and determined that those defendants had no present interest in the Cavanaugh property. Cavanaugh, the plaintiff in CT Page 12159 that action, also purchased her property from Toll Land, but the court did not consider or determine the issue of the Bridle Lands' easement because Bridle Lands was not a party. Bridle Lands is a defendant in the present action and in the companion case of Cavanaugh v. Bridle LandsAssociation, Inc., in which the plaintiffs and Cavanaugh seek to extinguish Bridle Lands' easement. On June 19, 2000, the court, Radcliffe, J., granted the defendants' motion for consolidation of the present case and the Cavanaugh actions. All of the actions were tried on April 26, 2001, and this memorandum of decision will apply to all the actions. The plaintiffs in all actions will be referred to collectively as the plaintiffs in this entire decision.
The parties have filed stipulation of facts, dated April 24, 2001, providing additional background information relevant to the issues in this case.
Although the plaintiffs were fully aware of the easement on their properties, they claim that their interest in the properties is not subject to the easement. They claim that Toll Land did not have title to any relevant property at the time of the grant of the easement because there was a break in the chain title to the property resulting from the lack of a deed in 1978 to transfer the property from Horrigan Associates to Newtown Associates, and thus Horrigan Associates remains legal owner of the property sold to them by Toll Land in 1999. The crux of their argument is that the easement granted by Toll Land to Bridle Lands in 1997 is null and void since Toll Land did not own the land on which it attempted to grant the easement. The premise of the plaintiffs' claim is that when Horrigan Associates changed its name to Newtown Associates and changed the form of Newtown Associates from a general partnership to a limited partnership, the real property interest of the partnership did not become the property of the reconfigured entity and could not do so without a deed of conveyance.[1] The court does not agree.
The issue to be resolved is what effect, if any, did the change from a general partnership into a limited partnership have on the ownership of and title to the real estate of the general partnership. At the time of the conversion on October 23, 1978, all five general partners agreed to reconstitute the general partnership as a limited partnership, and executed and recorded a certificate of limited partnership of Newtown Associates. The certificate showed the desire and intention of the principals of Horrigan Associates to reconstitute the partnership as a limited partnership with the new name of Newtown Associates.
In answering the question, several issues must be reviewed. At common law, a partnership was generally regarded as an aggregate of individuals who, as partners, were tenants in common of the firm's real estate. CT Page 12160Fidelity Trust Co. v. BVD Associates, 196 Conn. 270, 273 (1985). The Uniform Partnership Act (UPA) recognized a partnership as a legal entity for the purpose of acquisition of real estate in the partnership name. Id., 273.
Real property of a partnership is considered personalty. See Beecherv. Stevens, 43 Conn. 587 (1876); Estate of Havemeyer, 17 N.Y.2d 216
(1966) (applying Connecticut law). "Partnership real estate is treated in equity as if it was personal property." Id., 592. The UPA also considers real property owned by a partnership as personal property. Its provision "on the nature of partnership property are generally interpreted to mean that all real property owned by a partnership must be treated as personal property . . . accordingly, under the Uniform Act it is now almost universally held that the partnership realty is converted to personalty for all purposes. . . ." 59 Am.Jur.2d Partnership § 332 (1987).
Limited partnerships were created "to encourage trade by authorizing and permitting a capitalist to put his money into a partnership with general partners possessed of skill and business character only, without becoming a general partner, or hazarding anything in the business except the capital originally subscribed." Clapp v. Lacey, 35 Conn. 463, 466
(1868). Until amendments to the Uniform Limited Partnership Act (ULPA) were enacted in 1979, "there was very little substantive difference between the UPA and the ULPA regarding general and limited partnerships, except with respect to the liability of limited partners."[2] FidelityTrust Company v. BVD Associates, supra, 196 Conn. 274.
In the present case, Collins and Emil acquired ninety percent of the general partnership, Horrigan Associates, by purchase from the existing three general partners, Horrigan, Healy and Thorne. Immediately after this purchase was completed, the general partnership then had five general partners. Thereafter, on the same date, all partners agreed to convert the form of the partnership to a limited partnership and to change its name from William Horrigan, Jr. Associates to Newtown Associates. The partners, general and limited, executed an amended and restated limited partnership agreement of Newtown Associates and the general partners, Collins and Emil executed a certificate of limited partnership which was recorded in the Newtown land records indicating the change to a limited partnership.
The plaintiffs' claim that whatever effect the execution of these documents may have had, it did not transfer title to the property in question from a general partnership to a limited partnership. They claim that a deed was required to change ownership of the parcel. However, they have provided no authority for the propositions that a general partnership by the requisite vote of the partners, cannot transform itself CT Page 12161 into a limited partnership or that the reconstituted partnership does continue as owner of the partnership assets.
The current provisions of the UPA, effective July 1, 1997, provide for a conversion of a general partnership to a limited partnership in §34-386. A partnership that has been converted is for all purposes the same entity that existed before the conversion and all property owned by the converting partnership remains vested in the converted entity. U.P.A. § 34-387 (a) and (b) (1997). Its adoption clarified any question which may have existed on the issue, but there is no indication that a conversion was not permissible prior its enactment. The court holds that such changes had previously been accomplished. "The advent of new forms of limited liability business, particularly including the limited liability company (L.L.C.), and the clarification that firms can combine limited liability with "flow through" partnership taxation, have increased partnerships incentives to switch to one of these new forms.Recent statutory provisions have simplified the switch by clarifyingprocedures by which partnerships can become corporations or other limited liability firms without dissolving." (Emphasis added.) II Bromberg and Ribstein, Partnership § 7.21(f), p. 7:291 (Release No. 9-2000-2 Supp.). Thus, the new statutory provisions that allow the conversion of a general partnership to a limited partnership without a transfer of the assets simply articulated the law in practice before its enactment.[3]
The court therefore holds that these procedures were also in practice in 1978 at the time of the conversion of the Horrigan Associates partnership. Newtown Associates, upon conversion, became the owner of the property at issue, and thus no deed was necessary to effectuate the transfer.
The court concludes that since Horrigan Associates could convert to a limited partnership under the partnership law in effect in 1978, a deed was not necessary to transfer the land owned by Horrigan Associates to Newtown Associates. In light of this conclusion, it follows that Newtown Associates did have legal title to convey the property. Therefore, since the Bridle Lands' horse trail easement from Toll Brothers comes out of the Newtown Associates' chain of title, and Newtown Associates had good title to convey, title to the plaintiffs' property is quieted as to the plaintiffs, subject to the prior conveyance of the easement to Bridle Lands. Based on the court's finding, the court need not determine other issues presented by this action. Judgment is entered quieting title to the properties as to the plaintiff's subject to the easement of record of the Newtown Bridle Lands Association, Inc.[4]
Hiller, J.