[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Ann Howard's Apricots, is a restaurant in Farmington, owned and operated by Joseph and Ann Howard. It appeals a decision of a hearing officer appointed by the defendant commission on human rights and opportunities, which found that Apricots had unlawfully discriminated against one of its waiters in the terms and conditions of his employment and awarded him damages. Apricots originally named the waiter as a defendant under the pseudonym "John Doe II" to protect his privacy. The waiter died during the administrative proceedings, his sister was appointed his executrix, and the proceedings continued. The waiter and his executrix, who are also defendants in this appeal, are referred to interchangeably in this decision as the complainant.
The CHRO acted in this case pursuant to General Statutes §§ 46a-60 and 46a-86. The plaintiff's appeal is authorized by § 4-183. The court rules in favor of the plaintiff and remands the case for further proceedings.
Certain essential facts are not in dispute and are fully reflected in the record. The complainant had been a waiter at Apricots for more than seven years when, in 1990, he became ill. He was consulting doctors and gave varying reports to Apricots management concerning the causes of his illness. Most of these reports were untrue. His condition worsened, and in December 1990, Apricots put him on involuntary sick leave. At that time, there was considerable speculation among Apricots management and employees that the complainant was suffering from AIDS.
While on sick leave, the complainant was tested and found to be HIV positive, the condition that is the precursor to AIDS. He learned this in early January 1991, but he concealed the information from Apricots management. His physical condition was such that he could not then return to work. During this period, the CT Page 12822 complainant admitted to Apricots management that in the past he had given untrue reports of his physical condition, but he did not even then disclose the true nature of his illness. Nevertheless, the Apricots manager suspected it.
In March 1991, the complainant had sufficiently recovered so that he could return to work. When he attempted to do so, however, Apricots refused to reinstate him. The manager told him that he was fired because he had given various untrue explanations for his illness and that he was no longer credible.
On May 6, 1991, the complainant filed a complaint with the defendant CHRO, alleging that Apricots had unlawfully terminated his employment because of his physical disability, specifically that he was suffering from AIDS. The CHRO duly commenced an investigation. On January 23, 1992, the CHRO sent a letter to Apricots transmitting a "draft of the Reasonable Cause Finding" and inviting comment. Enclosed was a detailed memorandum of the CHRO investigator entitled "Finding of Cause and Summary."
On January 31, 1992, Apricots responded by letter from its manager to the CHRO, vigorously taking issue with the CHRO's findings of fact and conclusions.
On February 24, 1992, the CHRO investigator wrote Apricots to notify it that the investigator had determined that there was reasonable cause for believing that Apricots had committed a discriminatory act as alleged in the complainant's complaint. The letter also invited Apricots to engage in conciliation efforts and set a date for a meeting pursuant to General Statutes § 46a-83(d). The letter also advised Apricots of the hearing procedure to be followed in the event efforts at conciliation were unsuccessful, specifying that the hearing must be held not more than ninety days from the determination of reasonable cause. The letter stated, "The ninetieth day from my reasonable cause finding isMay 25, 1992." (Emphasis in the original.) There was no conciliation, and the designated hearing officer initiated the public hearing by convening a hearing conference on May 19, 1992. The hearing CT Page 12823 continued thereafter on various dates in 1992 and 1993. The complainant testified under direct examination by the CHRO on August 2, 1992, and completed his direct examination on November 2, 1992. As indicated in the hearing officer's final decision, the complainant's testimony was then interrupted and his cross examination by Apricots was delayed at CHRO's request to allow other witnesses to testify out of order. This occurred first on November 3, 1992, when another witness was substituted for the complainant, who was then available for cross examination. On November 16, 1994, Apricots commenced its cross examination of the complainant but was interrupted to accommodate two other witnesses for the CHRO.
The hearing officer permitted the delay and interruption of the complainant's cross examination to accommodate other CHRO witnesses on condition that Apricots preserved its right to complete its cross examination of the complainant; in particular, in her final decision, the hearing officer explicitly determined that Apricots did not waive its rights in that regard. Tragically, after November 16, 1992, the complainant's condition deteriorated suddenly and drastically. A hearing scheduled for December 21 was cancelled because the complainant was too ill to attend, and he never recovered. The complainant died on February 3, 1993. Apricots never had the opportunity to complete its cross examination.
Subsequent to the complainant's death, Apricots moved to strike all of his testimony. The hearing officer denied the motion, ruling instead that she would accord "less weight" to the complainant's testimony on subjects that had not been subjected to cross examination. The hearing continued and concluded with the substitution of the complainant's executrix.
In her final decision, the hearing officer determined that the CHRO had proved that Apricots discriminated against the complainant in the terms and conditions of his employment by firing him because of his disability or perceived disability. On the basis of that determination, the hearing officer awarded damages for back pay, adjusted to reflect other income earned after CT Page 12824 his termination, in the amount of $15,910.34. She also awarded damages for emotional distress in the amount of $15,000.00. She also awarded damages for attorney fees to be determined upon submission of documentation by the complainant's attorney and review and comment by Apricots. The hearing officer also issued orders aimed at eliminating future incidents of discrimination by Apricots, including training programs for Apricots management.
Plaintiff Apricots advances six claims as the bases of its appeal. These are
 (1) that the hearing officer failed to dismiss the complaint because the hearing was not held within ninety days after the finding of reasonable cause;
 (2) that the hearing officer improperly failed to strike the entire testimony of the complainant because of the incomplete cross examination;
 (3) that the hearing officer did not have statutory authority to award attorney fees;
 (4) that the hearing officer did not have statutory authority to award damages for emotional distress, and even if she did have such authority, there was insufficient basis for awarding such damages in this case;
 (5) that the hearing officer's determination of back pay was in error;
 (6) that the hearing officer's determination of discrimination was clearly erroneous in view of all of the evidence.
After this appeal was filed, the court raised the issue of its jurisdiction, sua sponte. The question is whether Apricots filed the appeal in this court within forty-five days after the mailing of the agency's final decision as required by General Statutes § 4-183(c). The court must "fully resolve" any jurisdictional question before considering the merits of the appeal. Castro v.Viera, 207 Conn. 420, 429 (1988). CT Page 12825
Section § 4-183(c) provides that an appeal of an administrative decision must be served on all parties of record and filed in the Superior Court "(w)ithin forty-five days after mailing of the final decision . . . or, if there is no mailing, within forty-five days after personal delivery of the final decision under (§ 4-180)." Failure to file an appeal within the forty-five day time period deprives the court of subject matter jurisdiction.Glastonbury Volunteer Ambulance Association, Inc. v.Freedom of Information Commission et al, 227 Conn. 848
(1993).
In the present case, the court initially noted that the record indicates that the hearing officer signed her final decision on September 22, 1993, and mailed copies to all parties on that date. Since Apricots did not file its appeal in the court until November 12, 1993, the filing would have been untimely if September 22 were deemed the mailing date. Accordingly, the court held a hearing on this jurisdictional question. At the hearing, the CHRO supplemented the record, adding thereto a letter from the CHRO to all parties dated September 27, 1993. That letter transmitted a copy of the hearing officer's final decision. If the date of that letter, September 27, is deemed the date of the mailing of the final decision, within the meaning of § 4-183(c), the appeal was filed on the forty-fifth day and was timely. (November 11 was a state holiday. See General Statutes § 51-347c.)
The CHRO's September 27 letter is entitled "Complainant's/Respondent's Notice of Final Order of Memorandum of Decision." The letter advises the parties of their right to request reconsideration and their right to appeal. It advises them of the statutory timetables, including the forty-five day limit established by § 4-183. The letter states, "Further, in accordance with the statutory scheme referenced above, you are herebynotified that the enclosed (memorandum of decision) shall constitute the Final Order of the Commission upon this complaint." (Emphasis added.) The inescapable implication of the language of the letter of September 27 is that the CHRO deemed it to be the transmittal of the final decision, thereby commencing the forty-five day appeal period. CT Page 12826
"Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." Killingly v.Connecticut Siting Council, 220 Conn. 516, 522 (1991). This rule dictates the conclusion that the mailing of the final decision in this case, within the meaning of § 4-183(c), was on September 27, 1993, thereby preserving the court's jurisdiction.
Apricots claims that the administrative hearing was not timely commenced and, therefore, the hearing officer wrongfully failed to dismiss the complaint. Apricots bases this claim on General Statutes § 46a-84(b), which requires a hearing upon a finding of reasonable cause and "provided such hearing shall be held not later than ninety days after a finding of reasonable cause." Apricots claims that the ninety day period is mandatory and that failure to commence the hearing within the period deprives the CHRO of further jurisdiction over the complaint. Apricots further claims that in this case the period must be measured from January 23, 1992, the date of the CHRO's letter to the parties transmitting the "draft" findings. Since the hearing did not commence until May 19, 1992, which was more than ninety days after January 23, Apricots argues that the complaint should have been dismissed. The court disagrees.
The CHRO's letter of January 23, 1992, was explicitly an invitation to the parties to comment in advance on the investigator's proposed findings of fact and conclusions. This was in accord with the requirement in 46a-83(b) that the investigator afford each party an opportunity to provide written comments on the evidence "before issuing a finding of reasonable cause." (Emphasis added.) And, in this case, plaintiff Apricots took advantage of the opportunity by replying to the January 23 letter and contesting the investigator's findings. Thereafter, on February 24, 1992, the investigator mailed his final determination of reasonable cause. The court holds that the finding of reasonable cause for purposes of § 46a-84(b) was February 24, 1992. The subsequent hearing on May 19 was well within the ninety day period provided in that statute. CT Page 12827
There is a further reason why the plaintiff's argument with respect to the hearing date may not be sustained. The legislature added the ninety day requirement to § 46a-84(b) in Public Act 89-332. This court has held that a similar time constraint in § 46a-82a, which was added in the same public act, is directory only, not mandatory. Bridgeport Hospital v. CHRO, 11 Conn. L. Rptr. No. 1, 17 (March 14, 1994). The basis of this court's holding in that case was the rule for distinguishing mandatory provisions from those that are merely directory as enunciated in Statewide GrievanceCommittee v. Rozbicki, 219 Conn. 473 (1991). There, the court held
 (I)n the interpretation of statutes the word "shall" may have a meaning that is directory rather than mandatory. Fidelity Trust Co. v. BVD Associates, 196 Conn. 270, 278, 492 A.2d 180 (1985).
 The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the, essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. International Brotherhood of Teamsters v. Shapiro, 138 Conn. 57, 68, 82 A.2d 345 (1951). If it is a matter of substance, the statutory provision is mandatory. State ex rel. Eastern Color Printing Co. v. Jenks, 150 Conn. 444, 451, 190 A.2d 591
(1963). If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. Winslow v. Zoning Board, 143 Conn. 381, 388, 122 A.2d 789 (1956). `Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply.' Broadriver, Inc. v. Stamford, 158 Conn. 522, 529, 265 A.2d 75 (1969)."
Fidelity Trust Co. v. BVD Associates, supra, 278.
The statutory provision in question in this case was clearly designed to secure order and dispatch in processing complaints brought to the CHRO, but there is CT Page 12828 no suggestion that a failure to adhere to the timetable deprives the agency of jurisdiction. The court holds that the provision in § 46a-84(b) requiring that a hearing be held within ninety days of a finding of reasonable cause is directory only and that failure to meet that deadline is not a basis for dismissal of a complaint.
The dispositive issue in this case is whether the hearing officer exercised proper discretion in denying Apricots' motion to strike the complainant's testimony as a result of the incomplete cross examination. The court concludes that she did not.
In Dragan v. Connecticut Medical Examining Board,24 Conn. 662, 667 (1991); rev'd on other grounds,223 Conn. 618 (1992), our Appellate Court held
 Cross-examination is an indispensable means of eliciting facts that may show motive, bias, interest or prejudice. State v. Fullwood, 199 Conn. 281, 286, 507 A.2d 85 (1986). It "`is a substantial legal right which may not be abrogated or abridged at the discretion of the court.'" Pickman v. Pickman, 6 Conn. App. 271, 277-78, 505 A.2d 4 (1986). We recognize that proceedings before administrative agencies are not bound by strict rules of evidence and procedure but they cannot be conducted so as to violate fundamental rules of justice. Pizzola v. Planning Zoning Commission, 167 Conn. 202, 207, 355 A.2d 21 (1974). Nor may the informalities that are permissible in an administrative hearing be permitted to prejudice the rights of the parties. If this should happen, the court is available to rectify the wrong. Adam v. Connecticut Medical Examining Board, 137 Conn. 535, 540, 79 A.2d 350 (1951). CT Page 12829 Moreover, the right of cross-examination is expressly provided for in contested hearings conducted by agencies subject to the UAPA, General Statutes 4-178(5).
"If a witness testifies on direct examination but then becomes unavailable for cross examination because of illness or death, the court has discretion to choose one of the following options: (1) to declare a mistrial, (2) to strike the direct, or (3) to allow the direct to stand. The proper choice depends upon such factors as the identity of the witness, the importance of the witness's direct testimony, and the nature of the case." C. Tait 
J. LaPlante, Handbook of Connecticut Evidence § 3.4.3 (2d Ed. 1988). (Cited by plaintiff and defendants in their briefs.)
In State v. Rado, 172 Conn. 74, 81-82 (1976), the court held that it was a proper exercise of discretion merely to strike the direct testimony of a prosecution witness who became ill and could not be cross examined. The court rejected the defendant's argument that a mistrial should have been ordered, reasoning that the witness's testimony was relatively unimportant.
In the present case, the testimony of the witness who died before completion of his cross examination was, of course, vitally important to the proceedings. As in the Dragan case, the witness here was the complainant. The substance of his testimony was critically important to the resolution of his claims. Furthermore, as in any case, the witness's credibility was at issue. And in this case, that issue took on an extra dimension. The principal, if not the sole, defense raised by Apricots to the complainant's claim that he was fired because of his physical disability was that, rather, he was fired because he had "lost credibility with management."
The court has reviewed the complainant's direct testimony and the abbreviated cross examination. In his direct testimony, he testified about the events and circumstances leading to his discharge, including his communications with Apricots's management; he testified as to his damages from lost wages and his attempts to CT Page 12830 mitigate those damages by finding other work; he testified as to his emotional distress, for which he was also seeking damages. The direct testimony consumed approximately one hundred seventy-five pages of transcript. The cross examination, which consumed only fifty-five pages of transcript, dealt primarily with the complainant's physical condition, the circumstances of his discharge and his communications with management. And it may be fairly characterized as only scratching the surface of those subjects. Apricots' counsel was questioning the complainant about an interview he had had with the manager on December 28, 1990. At that time, the complainant had already had an HIV blood test, although he did not then know the results. Nevertheless, he told the manager that he had never even had such a test. At that point, the cross examination was interrupted to accommodate another witness; it was never resumed.
As the above summary indicates, Apricots counsel was deprived of the opportunity to complete cross examination on a crucial subject, the complainant's credibility, which was a core issue in the case. He was also entirely deprived of the opportunity to cross examine the complainant on the subject of his damages, which was also crucial to the hearing officer's final decision.
Application of the criteria set forth in Tait and LaPlante's Handbook of Connecticut Evidence and in Statev. Rado, supra, to the facts of this case indicates that the minimal remedy was to strike the complainant's direct testimony. Indeed, these facts would arguably have supported a decision to order a new hearing, which would be the functional equivalent of declaring a mistrial.Dragan v. Connecticut Medical Examining Board, supra,24 Conn. App. at 668.
In defense of the hearing officer's decision denying Apricots' motion to strike the complainant's testimony, the defendants cite General Statutes § 52-172. That statute provides, in relevant part, "In actions by . . . representatives of deceased persons . . . the entries, memoranda and declarations of the deceased relevant to the matter in issue, may be received as evidence."
The defendants offer no Connecticut or other case CT Page 12831 law authority for their argument that § 52-172 requires the admission in evidence of direct testimony in a contested administrative hearing or trial when the witness dies before he or she can be cross examined on that testimony. In order to sustain this argument, the word "declarations" in the statute must be construed to include such uncross-examined direct testimony. Such a theory, however, if adopted, would plainly conflict with the firmly established rule guaranteeing the right of cross examination.
The circumstances of this case illustrate persuasively why the defendants' interpretation of § 52-172 should not be adopted. In this case, the witness's direct testimony was offered for the sole purpose of convincing the fact finder of the merits of his complaint. It contained statements concerning the witness's subjective feelings and beliefs that were relevant and material to his claims. The hearing officer's final decision reveals that the direct testimony carried a powerful, indeed decisive, impact. This is particularly true with respect to the hearing officer's findings on the issue of damages, which were supported almost entirely by the witness's uncross-examined testimony.
For all of the foregoing reasons, the court concludes that § 52-172 did not require the retention of the complainant's direct testimony in this case. The court further concludes that the hearing officer's decision denying Apricots's motion to strike that testimony constituted an abuse of discretion. In reaching this conclusion, the court notes that the hearing officer was confronted with an extremely difficult and painful choice, with little or no guiding precedent. The law requires, nevertheless, that the decision be reversed.
The court's decision on the issue of cross examination makes it unnecessary to consider the plaintiff's other claims on appeal.
Pursuant to General Statutes § 4-183(j), plaintiff Apricots's appeal is sustained. Pursuant to § 4-183(k), the case is remanded to the CHRO with instructions that the direct testimony of the complainant be stricken and CT Page 12832 that a new decision be rendered on the basis of the record without that testimony.