## CITY OF STAMFORD ET AL. *v.* JOSEPH STEPHENSON ET AL.
### (AC 22322)

Bishop, Dupont and Mihalakos, Js.

---

Argued April 30—officially released August 19, 2003

*James V. Minor*, assistant corporation counsel, with whom, on the brief, was *Thomas J. Cassone*, director of legal affairs, for the appellants (plaintiffs).

*Ridgley Whitmore Brown*, with whom, on the brief, were *Roger Lee Crossland* and *Daniel Shepro*, for the appellees (named defendant et al.).

*Geoffrey K. Milne*, with whom, on the brief, was *Erin M. Field*, for the appellee (intervening defendant Atlantic Mortgage and Investment Corporation).

*Opinion*

BISHOP, J. The plaintiffs[1] appeal from the judgment of the trial court ordering them to demolish a house at 179 Highview Avenue in Stamford at their expense, and rescinding an award of attorney's fees and the per diem fines that had been levied against the defendants.[2] On appeal, the plaintiffs claim that the court abused its discretion (1) by ordering them to demolish the building at their expense and (2) by modifying the fines and attorney's fees.[3] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiffs' appeal. In 1993, the defendants purchased a four unit condominium at 179 Highview Avenue[4] that did not conform to the zoning regulations of the plaintiff city of Stamford (city). The defendants were issued a building permit to "repair

---

[1] In addition to the city of Stamford, the plaintiffs include Anthony P. Strazza, the building inspector and former zoning enforcement officer for the city of Stamford, and James J. Lunney III, the present zoning enforcement officer of the city of Stamford.

[2] In addition to the named defendant, Joseph Stephenson, his mother, Phyllis Stephenson, is a defendant. Atlantic Mortgage and Investment Corporation, the assignee of a first mortgage on the premises at issue, intervened as a defendant. We refer in this opinion, however, only to the Stephensons as the defendants.

[3] At oral argument, counsel for the plaintiffs withdrew an additional claim that was based on the theories of collateral estoppel and res judicata.

[4] The building was within an RM-1 residential multifamily zoning district, which allowed only two units on the property. The property also was nonconforming as to area and setbacks so that the foundation on all four sides could not be expanded.

and remodel" the condominium to conform to the zoning regulations. Instead of repairing the house, the defendants increased the size of the footprint of the house and added a third story. The defendants were issued two cease and desist orders requiring them to remove the third story and to reduce the footprint in conformity with the original footprint depicted in a 1986 certified plot plan, which had been recorded in the land records.

The defendants defied the cease and desist orders, and the city brought this action seeking a permanent injunction to enforce the cease and desist orders, and to recover attorney's fees and to levy statutory fines and penalties pursuant to General Statutes § 8-12.[5] After trial, the court, on November 8, 2000, rendered judgment in favor of the plaintiffs, finding that the defendants had violated the zoning regulations and the two cease and desist orders.[6] The court then bifurcated the

[5] General Statutes § 8-12 provides in relevant part: "If any building or structure has been erected, constructed, altered, converted or maintained . . . in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction . . . may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation . . . . The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both . . . . Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service, or having been served with a cease and desist order . . . fails to comply with such order immediately, or continues to violate any provision of the regulations made under authority of the provisions of this chapter specified in such order shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality. . . ."

[6] In its memorandum of decision, the court made factual findings, which, later in the decision, it vacated, leaving in place only its orders.

proceeding and ordered a separate hearing concerning the issue of relief and damages.[7]

On January 11, 2001, the court reinstated its factual findings of November 8, 2000, which it had made in its memorandum of decision on that date, but vacated later in that decision, and ruled in the 2001 decision that the defendants' actions in violating the zoning regulations and the cease and desist orders were "wilful," and that the defendants had misled the zoning enforcement officer as to the location of the original foundation. The court further noted that there was evidence to suggest that the defendants may have altered public records.

The court, on the basis of the financial statements presented by the defendants, concluded that they lacked the financial ability to remove the additions on the building or to reduce the footprint and return the foundation to the size and configuration on the certified plot plan. Thus, on January 11, 2001, the court ordered the plaintiffs to demolish the property at their expense, and ordered the defendants to pay a per diem fine and the attorney's fees of the plaintiffs.[8] The court also advised the defendants that if they did not appeal from the decision and did not interfere with demolition, the court, upon motion, would remit all or part of the fines and attorney's fees.

On May 15, 2001, the plaintiffs tore down the structure at 179 Highview Avenue. The defendants neither interfered with the demolition nor appealed. As stated on January 11, 2001, the court revisited the issue of attorney's fees and fines. On July 2, 2001, the court eliminated

---

[7] Two hearings were held to determine if the defendants had the financial ability to bring the building into compliance with the zoning regulations.

[8] The court awarded the plaintiffs $25,000 in attorney's fees. The court also imposed a fine of $100 per day from June 16, 1995, the date of service of the cease and desist order, to the date of the decision, January 11, 2001, totaling $203,600. A civil penalty of $2500 also was levied against the defendants.

the award of attorney's fees and the imposition of the daily fines. On July 19, 2001, the plaintiffs filed a motion to reargue, which was granted, but on August 27, 2001, after oral argument, the court denied the relief requested. The plaintiffs appealed to this court on September 14, 2001.

I

The plaintiffs first claim that the court abused its discretion in ordering them to demolish the building at their expense. We need not address that issue, namely, whether there was an abuse of discretion with regard to the demolition order, because that portion of the appeal is untimely.[9] Practice Book § 63-1 (a) requires that an appeal be filed within twenty days after a final judgment. This court will hear appeals only from final judgments. See *Kobyluck* v. *Zoning Board of Appeals*, 70 Conn. App. 55, 58, 796 A.2d 567 (2002). On January 11, 2001, the court issued its final judgment in which it ordered the demolition of the house at the plaintiffs' expense. The plaintiffs did not appeal from the judgment until September 14, 2001. The appeal, therefore, was filed more then twenty days after the final judgment.

The plaintiffs contend that the January 11, 2001 decision was not a final judgment and, thus, they could not appeal until the final judgment of July 2, 2001, when the court reduced the fines and the attorney's fees. We disagree.

A final judgment from which an appeal will lie is one "where the order or action terminates a separate and distinct proceeding . . . ." *State* v. *Curcio*, 191 Conn.

[9] Although the defendants previously raised that issue by way of a motion to dismiss the appeal, which we denied, we have concluded that it is necessary to reconsider, sua sponte, our jurisdiction to hear that portion of the appeal. See *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 187 Conn. 509, 511 n.6, 446 A.2d 1082 (1982).

27, 31, 463 A.2d 566 (1983). The mere fact that the court indicated that it was willing to modify the fines and attorney's fees did not affect the finality of the demolition order. The modification was separate and distinct from the demolition order. The wording of the judgment on January 11, 2001, was that "these ORDERS together with the permanent injunction, civil penalties, attorney's fees, per diem fines and demolition order are final, appealable orders of this court effective January 11, 2001."[10] Furthermore, the hearing and judgment on July 2, 2001, made no mention of the demolition order, nor did it affect the demolition order in any substantive way. Because we conclude that this was a final judgment, from which the appeal was filed after the twenty day period had expired, we need not address the issue further. See generally *Nicoll* v. *State*, 38 Conn. App. 333, 335–36, 661 A.2d 101 (1995) (discussing this court's policy on late appeals).

## II

We next turn to the plaintiffs' second claim, which is that the court abused its discretion in rescinding its orders for attorney's fees and per diem fines. The plaintiffs argue that the defendants had "flagrantly violated" the zoning regulations, and, therefore, it was an abuse of discretion to eliminate the fines and attorney's fees. We disagree.

Our question in reviewing a decision regarding attorney's fees and daily fines pursuant to § 8-12 is whether the court abused its discretion. *Monroe* v. *Renz*, 46 Conn. App. 5, 14, 698 A.2d 328 (1997). It is well settled that "[t]he essential purpose that § 8-12 is intended to

---

[10] Although we are not bound by the court's finding as to the finality of its January 11, 2001 orders; see, e.g., *Rhode Island Hospital Trust National Bank* v. *Trust*, 25 Conn. App. 28, 32, 592 A.2d 417, cert. granted on other grounds, 220 Conn. 904, 593 A.2d 970 (1991) (appeal withdrawn July 10, 1992).

further, namely, the deterrence of violations of the zoning ordinances, does not mandate that a trial court award daily fines, but rather vests discretion in a trial court to grant such fines under the appropriate circumstances." Id. Therefore, we review the court's ruling to determine if there was an abuse of discretion.

The plaintiffs go to great lengths to discuss the alleged wilfulness of the defendants' actions. There is nothing, however, in our case law to indicate, nor do the plaintiffs allege, that "wilfulness" affects our standard of review. Rather, they argue that the defendants had misled the zoning enforcement officer on numerous occasions when they altered the field assessor's cards and that given the nature of their actions, it was an abuse of discretion to remit most of the fines and attorney's fees. We disagree.

"Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 635, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

At the outset, we note that § 8-12 does not require a court to impose fines and to award attorney's fees. See *Monroe* v. *Renz*, supra, 46 Conn. App. 14. Although § 8-12 provides in relevant part that "[t]he owner or agent of any building or premises where a violation of any provision of [the zoning] regulations has been committed . . . shall be fined not less then ten nor more than one hundred dollars for each day that such violation continues," this court has held that the use of "shall"

in § 8-12 does not create a mandatory duty to impose fines. Id. Rather, a court has discretion to impose such fines, as the circumstances require. Id. Therefore, the court correctly applied § 8-12, as the case law allows the court to use its discretion to impose fines and to award attorney's fees. Because the court correctly applied the law, we now turn to whether the court's judgment was unjust.

In determining if the court's judgment was unjust, it is helpful to note, briefly, the policy behind § 8-12. Our Supreme Court has recognized that a primary purpose of zoning regulations is to protect the health and safety of the community. *Langbein* v. *Board of Zoning Appeals*, 135 Conn. 575, 580, 67 A.2d 5 (1949). The purpose of § 8-12 is to provide a means to enforce the zoning regulations and to prevent an unlawful use of a building. *Planning & Zoning Commission* v. *Desrosier*, 15 Conn. App. 550, 558, 545 A.2d 597 (1988).

In the present case, the defendants had defied, for years, the orders of the zoning enforcement officer. Further, the building at 179 Highland Avenue remained unfinished, and posed a serious danger to the health and safety of the community.[11] Additionally, the defendants had the legal right and ability to delay resolution of that issue by appealing and obtaining a stay of execution. See Practice Book § 61-11. If the defendants had appealed from the January 11, 2001 judgment, the building would not have been demolished in a timely fashion and would have remained a threat to the community. Under those circumstances, the court gave the defendants an incentive to abstain from exercising their right to appeal. The court indicated that if the defendants

---

[11] The chief building officer and state fire marshal had declared that the building was an "unsafe structure." The defendants never completed the work on the building, leaving it without a roof and subject to the elements, and, as such, mosquitoes infected with the West Nile virus were found on the premises.

did not appeal or interfere with the demolition of the building, the court would revisit the issue of the fines and attorney's fees. As a result of that order, the building was demolished and the zoning regulations were enforced. The decision of the court to remit the fines and the attorney's fees, therefore, was consistent with protecting the health and safety of the surrounding community.

Furthermore, in rendering its decision, the court carefully examined the defendants' financial situation. The court held two hearings to examine the defendants' financial records. Those examinations led the court to conclude that the defendants could not afford to remodel the property in conformance with the certified plot plan. Upon rendering judgment on July 2, 2001, the court found that the defendants were $145,000 in debt and did not have the financial resources to pay the attorney's fees or the per diem fines. Given the defendants' financial inability to pay, it was not an abuse of discretion for the court to remit the fines and attorney's fees. Under the circumstances, we do not conclude that the court's action was unjust; rather, we believe that the court's innovative solution was well within its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.