HISTORIC DISTRICT COMMISSION
OF THE BOROUGH OF FENWICK
*v.* FRANK SCIAME ET AL.
(AC 33672)

DiPentima, C. J., and Sheldon and Lavery, Js.

---

Argued September 19, 2012—officially released January 15, 2013

*Genevieve P. Salvatore,* for the appellants (defendants).

*Lewis K. Wise,* for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendants, Frank Sciame, Barbara Sciame, 273 Water Street, LLC, and Fenwick Acquisition, LLC, appeal from the judgment of the trial court rendered following its decision striking the two count counterclaim brought against the plaintiff, the historic district commission of the borough of Fenwick (commission), in an enforcement action brought by the commission. On appeal, the defendants claim that the court improperly determined that (1) the motion to strike the counterclaim met the requirements of Practice Book § 10-41, (2) the counterclaim was barred by General Statutes § 52-557n and our Supreme Court's holding in *Upjohn Co.* v. *Zoning Board of Appeals,* 224 Conn. 96, 616 A.2d 793 (1992), and (3) the defendants' claim of intentional infliction of emotional distress was without merit. We disagree and affirm the judgment of the trial court.

The record reveals the following facts. The defendants own property at 10 Mohegan Avenue in the section of Old Saybrook known as the borough of Fenwick. The property lies in the Fenwick Historic District, which is subject to the jurisdiction of the commission. In 2010, the defendants filed an application with the commission for a certificate of appropriateness to permit the retention of four granite posts installed on the defendants' property as part of a renovation, but not shown on the

approved plans.[1] Rather than order the removal of the posts, the commission allowed the defendants to file the application after the posts were installed. On June 5, 2010, the commission granted the certificate of appropriateness with the condition that the two posts at the end of the driveway be lowered in height from five feet to four feet. The defendants did not appeal from the condition or any other part of the commission's decision.[2] On September 22, 2010, the commission filed an action in Superior Court alleging that the defendants had not lowered the height of the posts. The commission sought a judgment to enforce the condition, to assess fines, and to recover costs and fees under General Statutes § 7-147h.[3]

---

[1] General Statutes § 7-147d (a) provides: "No building or structure shall be erected or altered within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the historic district commission and approved by said commission."

General Statutes § 7-147a (a) provides in relevant part: "As used in this part . . . 'erected' means constructed, built, installed or enlarged; 'exterior architectural features' means such portion of the exterior of a structure or building as is open to view from a public street, way or place . . . 'structure' means any combination of materials, other than a building, which is affixed to the land, and shall include, but not be limited to, signs, fences and walls . . . 'appropriate' means not incongruous with those aspects of the historic district which the historic district commission determines to be historically or architecturally significant."

[2] General Statutes § 7-147i provides in relevant part: "Any person or persons severally or jointly aggrieved by any decision of the historic district commission or of any officer thereof may, within fifteen days from the date when such decision was rendered, take an appeal to the superior court for the judicial district in which such municipality is located . . . . Procedure upon such appeal shall be the same as that defined in section 8-8."

[3] General Statutes § 7-147h (a) provides in relevant part: "If any provision of this part or any action taken or ruling made by the historic district commission pursuant to the provisions of said sections or of any regulation or ordinance adopted under said sections has been violated, the commission may, in addition to other remedies, institute an action in the superior court for the judicial district wherein such violation exists, which court shall have jurisdiction to restrain such violation and to issue orders directing that the violation be corrected or removed. Such order may direct the removal of any building, structure or exterior architectural feature erected in violation

On January 13, 2011, the defendants filed an amended answer, special defenses and a two count counterclaim.[4] The first count of the counterclaim alleged that the commission had acted beyond its powers under General Statutes § 7-147a et seq. and under its own regulations. The second count sought damages for intentional infliction of emotional distress. In support of the two counts of the counterclaim, the defendants made the following relevant allegations: (1) "through letters and oral communications, [the commission] repeatedly demanded that the [defendants] file an application for a certificate of appropriateness in connection with the installation of granite landscaping implements on the [p]roperty" and because of the continued "harassment and demands," the defendants filed the application; (2) "even though they believed no such [a]pplication was required"; (3) the commission approved the application "but with inappropriate and historically unfounded stipulations"; (4) "the [c]ertificate is inherently ambiguous, as it arbitrarily and without historic precedent, mandated that certain inner posts of the granite landscaping installation be of different size [than] certain outer posts"; (5) after issuing the certificate, the commission "continued to harass and annoy the [defendants] regarding the granite landscaping installation"; (6) "[d]espite the [defendants'] compliance with the unenforceable [c]ertificate, [the commission] continued to make unreasonable demands as to the height of the landscaping installation"; and (7) the commission "has brought the instant action in

of said sections or any bylaw or ordinance adopted under said sections . . . ."

Section 7-147h also allows for fines against the property owner and for the commission to collect its court costs and fees in pursuing such enforcement actions.

[4] The court struck both counts of the counterclaim and four of the five special defenses the commission challenged in its motion to strike. This appeal challenges only the order striking the two count counterclaim.

a further attempt to intimidate, harass and annoy the [defendants] into complying with [its] unfounded, illegitimate and illegal demands."

The commission moved to strike both counts of the counterclaim on the grounds that, under *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 96, they failed to state a claim for which relief could be granted and they were barred under § 52-557n. On June 23, 2011, the court issued a memorandum of decision in which it granted the commission's motion to strike both counts of the counterclaim. The defendants did not file a new pleading; see Practice Book § 10-44; and the court rendered judgment in favor of the commission on the counterclaim. This appeal followed.[5]

"Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [plaintiff's motion] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000).

The defendants argue first that the court improperly considered the motion to strike because it did not comply with Practice Book § 10-41.[6] The defendants argue that the motion to strike merely cites the name of a case and the name of a statute, thereby running afoul

---

[5] On August 2, 2012, the trial court, *Holzberg, J.*, rendered judgment in favor of the commission in the underlying case, ordering the defendants to lower the height of the posts in compliance with the commission's order. The trial court did not impose any fines.

[6] Practice Book § 10-41 provides: "Each motion to strike raising any of the claims of legal insufficiency enumerated in the previous sections shall separately set forth each such claim of insufficiency and shall distinctly specify the reason or reasons for each such claimed insufficiency."

of our decisions in *Stuart* v. *Freiberg*, 102 Conn. App. 857, 927 A.2d 343 (2007), and *Barasso* v. *Rear Still Hill Road, LLC*, 64 Conn. App. 9, 13–14, 779 A.2d 198 (2001). The defendants argue that merely citing a case name and the name of a statute does not satisfy the command of Practice Book § 10-41 to "distinctly specify" the reason or reasons for each claim of insufficiency.

The court correctly rejected this argument, finding that the commission, in its memorandum of law supporting the motion to strike, explained the reasons for the insufficiency of each count of the counterclaim. In *Stuart*, we reversed the trial court's granting of a motion to strike where the defendant had moved to strike all of the counts in the plaintiff's complaint based on the single statement that the counts were "legally insufficient and fail to allege any facts that would indicate [that the] defendant is liable to [the] plaintiffs," without further specificity. (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, supra, 102 Conn. App. 860. Relying on our decision in *Barasso*, we held that, to satisfy Practice Book § 10-41, the motion itself must contain the specific reasons for insufficiency, even when the accompanying memorandum of law provides specific reasons. Id., 861. But we distinguished the facts in *Barasso* from those in *Rowe* v. *Godou*, 12 Conn. App. 538, 532 A.2d 978 (1987), rev'd, 209 Conn. 273, 550 A.2d 1073 (1988). *Stuart* v. *Freiberg*, supra, 862 n.3. In *Rowe*, we upheld the trial court's granting of a motion to strike that alleged that the claim was " 'barred by statute' "; *Rowe* v. *Godou*, supra, 542; without citing to a specific statute, because the motion adequately submitted the material issue of law to the court and the specific statute was cited in the memorandum of law. Id., 541–42.

In the present case, the commission, in the motion itself, offered two distinct grounds to strike the first

count of the counterclaim, submitting the specific statute and the specific case upon which its claim of insufficiency was based. It further explained the impact of the statute and the case law in its supporting memorandum of law. That approach clearly exceeds the required standard in *Rowe*, which was approved expressly by our Supreme Court on appeal. *Rowe* v. *Godou*, 209 Conn. 273, 275, 550 A.2d 1073 (1988).

In their memorandum of law in opposition to the motion to strike, the defendants raised no objection to the form or content of the motion to strike regarding the second count of the counterclaim. In doing so, they waived any defectiveness in pleading regarding the second count. See *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683 n.5, 513 A.2d 66 (1986) (because Practice Book § 154 [now § 10-41] is not jurisdictional in nature, court will consider improperly pleaded motion to strike when opposing party does not object); see also *Bouchard* v. *People's Bank*, 219 Conn. 465, 468 n.4, 594 A.2d 1 (1991) (same). We therefore conclude that the court properly considered the motion to strike on the merits, which we now consider.

Our Supreme Court in *Upjohn Co.*, a case with circumstances nearly identical to those in this case, made it clear that a party who accepts the benefits of a commission approval and does not appeal whatever conditions come with the approval may not defend against later enforcement of those conditions by attacking their validity. *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 101.[7] "[W]hen a party has a statutory right of appeal from the decision of an administrative agency,

---

[7] In the sole exception to that rule, where the challenging party alleges statutorily defective notice to the public of a land use authority's decision, *Upjohn Co.* allows an independent attack on the decision after the time period for an appeal has passed. *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 101. Neither of the counts of the counterclaim in this case alleges defective notice.

he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." (Internal quotation marks omitted.) Id., 102.

On both counts of the counterclaim, the defendants try to do exactly what *Upjohn Co.* prohibits. With respect to the first count, they directly attack the validity of the commission's action by arguing that it exceeds the commission's powers under § 7-147a et seq. With respect to the second count, they base their emotional distress claim entirely on allegations that the commission acted to enforce a regulation, and later an approval condition, both of which they claim were invalid. This is simply another collateral attack on the validity of the unappealed decision.

In *Upjohn Co.*, the court recognized that "there *may* be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy." (Emphasis added.) Id., 104–105. The defendants argued that this opens the door to review the commission's original decision and enforcement action. But the court in *Upjohn Co.* declined to decide that issue based on a case where the "lack of jurisdiction, if any, was far from obvious . . . ." Id., 104. The court chose instead to "leave that issue to a case that, unlike this case, properly presents it." Id., 105. A challenge to a historic district commission's approval condition requiring a property owner to lower the height of a granite post is also not such a case.

We also reject the defendants' argument that the trial court improperly evaluated the counterclaim on the merits rather than on the sufficiency of the pleadings.

"A motion to strike admits all *facts* well pleaded; it does not admit *legal conclusions or the truth or accuracy of opinions* stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 588, 693 A.2d 293 (1997).

Our Supreme Court's holding in *Upjohn Co.*, discussed previously, bars the first count of the counterclaim as a matter of law, and the court properly applied the law in reaching that conclusion.

We now address the second count of the counterclaim. "[I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint, counterclaim or cross complaint set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility, the court is not [fact-finding], but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." (Internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 847, 888 A.2d 104 (2006). Even if the commission did everything that the defendants alleged in the second count of the counterclaim, the allegations are not legally sufficient to state a claim for intentional infliction of emotional distress. The defendants' statement that the commission "harassed, intimidate[ed] and annoy[ed]" them by demanding that they comply with what they consider an invalid order is tied to the validity of the commission's enforcement actions. The counterclaim does not allege specific facts that constitute the extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress. See *Stancuna* v. *Schaffer*, 122 Conn. App. 484, 491–93, 998 A.2d

1221 (2010) (explaining standards for intentional infliction of emotional distress).

Finally, the court concluded correctly that § 52-557n bars both counts of the counterclaim. Section 52-557n (b) provides in relevant part: "[A] political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety . . . ." Nothing in either count of the counterclaim describes any action by the commission that could constitute a reckless disregard for health or safety. Nor did the defendants *allege* that the commission's conduct showed a reckless disregard for health and safety. Therefore, the commission may not be held liable. The defendants do not dispute this analysis, but argue that the statute's reference only to *liability* leaves the door open to challenge the validity of the action itself. We will not consider that argument because it is totally without merit.

The judgment is affirmed.

In this opinion the other judges concurred.