******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HISTORIC DISTRICT COMMISSION
OF THE BOROUGH OF FENWICK
*v.* FRANK SCIAME ET AL.
(AC 35713)

Gruendel, Alvord and West, Js.

*Argued April 17—officially released August 12, 2014*

(Appeal from Superior Court, judicial district of
Middlesex, Aurigemma, J.)

*Brendon P. Levesque*, with whom were *Kenneth J.
Bartschi* and, on the brief, *Genevieve P. Salvatore*, for
the appellants (defendants).

*Lewis K. Wise*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendants, Frank Sciame, Barbara Sciame, 273 Water Street, LLC, and Fenwick Acquisition, LLC, appeal from the order of the trial court awarding the plaintiff, the Historic District Commission of the Borough of Fenwick (commission), $50,654.87 in attorney's fees, costs, and expenses. On appeal, the defendants claim that the court improperly (1) awarded attorney's fees without making a finding that the defendants had violated General Statutes § 7-147h, and (2) awarded attorney's fees related to the defense of the defendants' counterclaim. We affirm the judgment of the trial court.

We adopt the following facts and procedural history set forth in this court's opinion in *Historic District Commission* v. *Sciame*, 140 Conn. App. 209, 58 A.3d 354 (2013). "The defendants own property at 10 Mohegan Avenue in the section of Old Saybrook known as the [B]orough of Fenwick. The property lies in the Fenwick Historic District, which is subject to the jurisdiction of the commission. In 2010, the defendants filed an application with the commission for a certificate of appropriateness to permit the retention of four granite posts installed on the defendants' property as part of a renovation, but not shown on the approved plans.[1] Rather than order the removal of the posts, the commission allowed the defendants to file the application after the posts were installed. On June 5, 2010, the commission granted the certificate of appropriateness with the condition that the two posts at the end of the driveway be lowered in height from five feet to four feet. The defendants did not appeal from the condition or any other part of the commission's decision.[2] On September 22, 2010, the commission filed an action in Superior Court alleging that the defendants had not lowered the height of the posts. The commission sought a judgment to enforce the condition, to assess fines, and to recover costs and fees under General Statutes § 7-147h.[3]

"On January 13, 2011, the defendants filed an amended answer, special defenses and a two count counterclaim.[4] The first count of the counterclaim alleged that the commission had acted beyond its powers under General Statutes § 7-147a et seq. and under its own regulations. The second count sought damages for intentional infliction of emotional distress. . . .

"The commission moved to strike both counts of the counterclaim on the grounds that, under *Upjohn Co.* v. *Zoning Board of Appeals*, [224 Conn. 96, 616 A.2d 793 (1992)] they failed to state a claim for which relief could be granted and they were barred under [General Statutes] § 52-557n. On June 23, 2011, the court [*Wiese, J.*] issued a memorandum of decision in which it granted the commission's motion to strike both counts of the counterclaim. The defendants did not file a new plead-

ing; see Practice Book § 10-44; and the court [*Holzberg, J.*] rendered judgment in favor of the commission on the counterclaim." *Historic District Commission* v. *Sciame*, supra, 140 Conn. App. 211–14.

On July 21, 2011, the defendants filed an appeal of Judge Wiese's decision granting the commission's motion to strike the counterclaim. While that appeal was pending, the action to enforce the condition imposed in the certificate of appropriateness continued, and the court, *Holzberg, J.*, issued its memorandum of decision on August 2, 2012. In that decision, the court concluded that "the most reasonable interpretation of the [commission's] order is that the pillars must be reduced in height such that from the roadbed or whatever location they are anchored into the ground the height to the top of the pillar is forty eight inches." The court ordered the defendants to comply with the commission's order within forty-five days following judgment. The court declined to impose fines on the defendants for noncompliance with the commission's order.[5] The defendants, however, did not comply with the order to decrease the height of the posts until after the commission filed a motion for contempt.[6]

By motion filed August 30, 2012, the commission requested attorney's fees pursuant to § 7-147h (b). In support of its request, the commission submitted the affidavit of its counsel attesting to the services performed and the hours billed. The commission requested $41,511.25 in attorney's fees and $1807.37 in expenses and reserved the right to request additional fees for future work on the matter. In its motion, the commission noted that "a significant portion of the legal fees incurred resulted from the defendants' actions in this case," including the filing of special defenses and a counterclaim. On September 12, 2012, the defendants filed an objection to the commission's motion, arguing that attorney's fees could not be awarded because the court, *Holzberg, J.*, in its August 2, 2012 decision, did not find that the defendants violated either the commission's order or § 7-147h. The defendants also argued that the court could not award attorney's fees to the commission because the court had not imposed fines. On September 19, 2012, the commission filed a reply brief, emphasizing that the "assessment of [attorney's fees] is in no way made dependent upon the imposition of fines or penalties."

On January 15, 2013, this court affirmed the judgment of the trial court granting the commission's motion to strike both counts of the defendants' counterclaim. *Historic District Commission* v. *Sciame*, supra, 140 Conn. App. 218–19. On February 13, 2013, the commission filed a second motion for attorney's fees and a supporting affidavit of its counsel attesting to the services performed and the hours billed. In addition to the amount requested in its August 30, 2012 motion, the commission

sought $7336.25 in appellate attorney's fees. A hearing was held by the court, *Aurigemma, J.*, on May 6, 2013. At that time, the commission also filed a supplemental affidavit of its counsel and attached the legal bills.

On May 16, 2013, Judge Aurigemma issued an order awarding the commission attorney's fees, costs, and expenses in the amount of $50,654.87.[7] Referencing the statutory authority under § 7-147h, the court noted "the legislature's intent to allow the award of attorney's fees in historic district commission enforcement proceedings regardless of whether the defendants' conduct was wilful." The court also explained the public policy reasons supporting the award of attorney's fees in cases like this one, including the unfairness of placing the burden on the taxpayers to sustain the costs of successful enforcement actions. The court additionally noted that the defendants' actions in filing a counterclaim "of dubious merit" and appealing from the striking of their counterclaim caused a significant portion of the attorney's fees to be incurred by the commission. The defendants appeal from this ruling.

We first set forth the standard of review that guides our analysis. Our review of the defendants' claims requires us to determine whether, in an action brought pursuant to § 7-147h, a defendant who has not been fined may nevertheless be ordered to pay attorney's fees to the commission bringing such action, and, whether § 7-147h authorizes the court to award attorney's fees incurred by such commission in the defense of a counterclaim. This case presents issues of statutory construction, which are questions of law requiring plenary review. *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 287, 865 A.2d 474 (2005).

The defendants' argument requires us to interpret § 7-147h. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Greenfield* v. *Reynolds*, 122 Conn. App. 465, 471, 1 A.3d 125, cert. denied, 298 Conn. 922, 4 A.3d 1226 (2010). We conclude that the meaning of the statute is plain and unambiguous and that the court's award of attorney's fees, costs, and expenses was not improper.

I

The defendants first claim that the award of attorney's fees to the commission was improper because the trial court never made a finding that they violated § 7-147h. Section 7-147h (b) provides in relevant part: "The owner or agent of any building, structure or place where a violation of any provision of this part or of any regulation or ordinance adopted under said sections has been committed or exists . . . shall be fined not less than ten dollars nor more than one hundred dollars for each day that such violation continues . . . ." This section also provides for the award of attorney's fees to the historic district commission bringing such enforcement action, stating in part: "All costs, fees and expenses in connection with actions under this section may, in the discretion of the court, be assessed as damages against the violator, which, together with reasonable attorney's fees, may be awarded to the historic district commission which brought such action. . . ." General Statutes § 7-147h (b).

A

We first consider whether § 7-147h mandates that the court impose daily fines upon the defendants in a successful enforcement action brought by a commission. The defendants argue that the court's failure to impose daily fines means that they were not violators, and, therefore, the court could not properly award attorney's fees to the commission. Specifically, the defendants claim "[i]f a party subject to an action brought pursuant to . . . § 7-147h is not fined, then they did not as a matter of law violate the statute." We disagree.

The defendants rely on the language of § 7-147h, which provides that the owner of a building where a violation has been committed shall be fined for each day the violation continues. It has been established that "the use of the word shall, though significant, does not invariably establish a mandatory duty." (Internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 744, 865 A.2d 428 (2005). "To determine whether a statute's provisions are mandatory, we have traditionally looked beyond the use of the word 'shall' and examined the statute's essential purpose." *Monroe* v. *Renz*, 46 Conn. App. 5, 14, 698 A.2d 328 (1997). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to

comply." (Citations omitted; internal quotation marks omitted.) *Fidelity Trust Co.* v. *BVD Associates*, 196 Conn. 270, 278, 492 A.2d 180 (1985).

The defendants assert that the purpose of § 7-147h is to punish those who violate historic district commission regulations. We disagree with the defendants' characterization of the purpose of the statute. It is clear from the plain language of the statute that the core purpose of § 7-147h is to provide a means of enforcement for historic district commissions' regulations and orders.[8] We are not persuaded, therefore, by the defendants' contention that the imposition of daily fines is so vital to the purpose of the statute as to be "the essence of the thing to be accomplished . . . ." *Fidelity Trust Co.* v. *BVD Associates*, supra, 196 Conn. 278. Accordingly, we conclude that the provision authorizing the imposition of fines is directory rather than mandatory.

In support of our conclusion, we note that construing the statutory authorization to impose fines as directory is consistent with this court's interpretation of the enforcement mechanism contained in General Statutes § 8-12. Section 8-12 authorizes zoning commissions to bring enforcement actions to obtain injunctions, fines, and attorney's fees. The statute also uses the term "shall" in authorizing the issuance of daily fines.[9] This court has determined that the use of the term shall in this context does not impose a mandatory requirement on the court to issue such fines. In *Stamford* v. *Stephenson*, 78 Conn. App. 818, 826, 829 A.2d 26, cert. denied, 266 Conn. 915, 833 A.2d 466 (2003), this court held that "a court has discretion to impose such fines, as the circumstances require." In *Monroe* v. *Renz*, supra, 46 Conn. App. 14, this court held that "[t]he essential purpose that § 8-12 is intended to further, namely, the deterrence of violations of the zoning ordinances, does not mandate that a trial court award daily fines, but rather vests discretion in a trial court to grant such fines under the appropriate circumstances." The purpose of § 8-12 is "to provide a means to enforce the zoning regulations and to prevent an unlawful use of a building." *Stamford* v. *Stephenson*, supra, 826. Likewise, the purpose of § 7-147h is to provide a means for historic district commissions to enforce orders and regulations, and the furtherance of this purpose does not require the court to award daily fines in every action brought pursuant to the statute.

The defendants point out that § 7-147h provides that attorney's fees "may" be awarded and that violators "shall" be fined to advance their argument that the legislature's use of both "shall" and "may" in the same section indicates that the legislature "was well aware of the differing meaning and use of each term." The defendants cite *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004), in which our Supreme Court stated that "when

the legislature opts to use the words shall and may in the same statute, they must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." (Internal quotation marks omitted.) Id. We are not persuaded that the court's decision in *Lostritto* stands for the proposition that *every* time the legislature uses both "may" and "shall," the term "shall" must be construed as mandatory.[10] Our Supreme Court previously has interpreted a statutory provision using the term "shall" to be directory where the term "may" was used in the immediately following subsection; see *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 466, 692 A.2d 742 (1997) (statute providing that tax assessor shall send notice of any increases or decreases in value of property was directory); and this court has done the same. See *Yanni* v. *Commissioner of Motor Vehicles*, 31 Conn. App. 350, 353–54, 624 A.2d 1175 (1993) (statute providing that commissioner of motor vehicles shall send notice of license suspension by certified mail was directory, rather than mandatory). In addition, this court construed the term "shall" in § 8-12 as directory, despite the existence of the term "may" in the same section.[11] See *Monroe* v. *Renz*, supra, 46 Conn. App. 14 (decision to grant daily fines within discretion of trial court).

In further support of our conclusion that the provision authorizing the court to impose fines is directory, we note that courts routinely articulate other considerations in determining whether a provision is directory or mandatory. One such indicator is whether the provision is stated in affirmative terms unaccompanied by negative words. See *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 790, 961 A.2d 349 (2008) ("[l]inguistically, a statutory provision generally is considered directory if the requirement is stated in affirmative terms unaccompanied by negative words" [internal quotation marks omitted]). Another factor is the presence or absence of "a penalty provision or invalidation of an action as a consequence for failure to comply with the statutory directive . . . ." Id., 791. Here, the language authorizing the imposition of fines under § 7-147h is set forth in affirmative terms, and there is no provision of any consequence in the event that the court declines to impose fines.

We conclude that the determination as to whether to impose fines under § 7-147h is within the discretion of the trial court. The court's decision to refrain from imposing fines upon the defendants did not, therefore, preclude the court from awarding attorney's fees to the commission.

B

Having determined that the imposition of fines under § 7-147h is directory rather than mandatory, we briefly respond to the defendants' argument that there was no

finding that they were violators. The defendants assert that "since [they] were not found to be violators, attorney's fees could not be imposed under § 7-147h." We disagree.

Judge Holzberg's memorandum of decision, while not specifically referring to the defendants as violators, ordered "compliance" with the commission's order. The order to comply is essentially an exercise of the court's authority "to restrain such violation and to issue orders directing that the violation be corrected or removed." General Statutes § 7-147h (a). The court was not required to affirmatively label the defendants as violators. The court's order of "compliance," standing alone, is sufficient to implicate the court's authority under § 7-147h (b), including the discretion to award attorney's fees.[12] Accordingly, we conclude that the court possessed the authority to award attorney's fees to the commission for its successful enforcement action.

II

The defendants next claim that the trial court improperly awarded attorney's fees related to the defense of the defendants' counterclaim. Specifically, the defendants claim "since a counterclaim is a distinct legal action, absent specific statutory authority, no attorney's fees incurred in connection with defending any counterclaim brought in connection with a . . . § 7-147h action can be awarded." The commission argues that the defendants' litigation strategy in choosing to bring their causes of action as a counterclaim to the enforcement action necessarily means that the attorney's fees related to the counterclaim were incurred within the enforcement action pursuant to § 7-147h. We agree with the commission.

Section 7-147h (b) provides in relevant part: "All costs, fees and expenses *in connection with actions under this section* may, in the discretion of the court, be assessed as damages against the violator, which, together with reasonable attorney's fees, may be awarded to the historic district commission which brought such action." (Emphasis added.) General Statutes § 7-147h (b). We first note that the term "in connection with" is not defined in the statute. Our Supreme Court, however, has interpreted the phrase broadly. In so doing, the court looked to the dictionary definition of the word "connection," finding it to be a "causal or logical relation or sequence . . . contextual relation or association . . . [or] relationship in fact . . . ." (Internal quotation marks omitted.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 235, 983 A.2d 1 (2009) (quoting Merriam-Webster's Collegiate Dictionary [10th Ed. 1993]). The court further noted that "the plain meaning of the statutory phrase 'in connection with' necessarily includes *any* factual, contextual or causal relationship." (Emphasis in original.) Id.

A counterclaim "has been defined as 'a cause of action existing in favor of a defendant against a plaintiff which a defendant pleads to diminish, defeat or otherwise affect a plaintiff's claim and also allows a recovery by the defendant.' " *Home Oil Co.* v. *Todd*, 195 Conn. 333, 341, 487 A.2d 1095 (1985) (quoting 1 E. Stephenson, Connecticut Civil Procedure [2d Ed. 1982 Supp.] § 129b). In other words, a counterclaim "is a cause of action . . . on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action." (Emphasis omitted; internal quotation marks omitted.) *Ameriquest Mortgage Co.* v. *Lax*, 113 Conn. App. 646, 649, 969 A.2d 177, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). The defendants in this instance chose to bring their cause of action not in a separate action, but rather as a counterclaim to the commission's enforcement action. Further, we note that the defendants' counterclaim was occasioned, at least in part, by the commission's institution of the enforcement action, in that both counts of the defendants' counterclaim included allegations specific to the commission's bringing the enforcement action.[13]

For the foregoing reasons, we conclude that the award of attorney's fees, costs, and expenses related to the defense of the defendants' counterclaim was statutorily authorized pursuant to § 7-147h. Accordingly, the court's award of such fees to the commission was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "General Statutes § 7-147d (a) provides: 'No building or structure shall be erected or altered within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the historic district commission and approved by said commission.'

"General Statutes § 7-147a (a) provides in relevant part: 'As used in this part . . . "erected" means constructed, built, installed or enlarged; "exterior architectural features" means such portion of the exterior of a structure or building as is open to view from a public street, way or place . . . "structure" means any combination of materials, other than a building, which is affixed to the land, and shall include, but not be limited to, signs, fences and walls . . . "appropriate" means not incongruous with those aspects of the historic district which the historic district commission determines to be historically or architecturally significant.' " *Historic District Commission* v. *Sciame*, supra, 140 Conn. App. 212 n.1.

[2] "General Statutes § 7-147i provides in relevant part: 'Any person or persons severally or jointly aggrieved by any decision of the historic district commission or of any officer thereof may, within fifteen days from the date when such decision was rendered, take an appeal to the superior court for the judicial district in which such municipality is located . . . . Procedure upon such appeal shall be the same as that defined in section 8-8.' " *Historic District Commission* v. *Sciame*, supra, 140 Conn. App. 212 n.2.

[3] "General Statutes § 7-147h (a) provides in relevant part: 'If any provision of this part or any action taken or ruling made by the historic district commission pursuant to the provisions of said sections or of any regulation or ordinance adopted under said sections has been violated, the commission may, in addition to other remedies, institute an action in the superior court for the judicial district wherein such violation exists, which court shall have jurisdiction to restrain such violation and to issue orders directing that the violation be corrected or removed. Such order may direct the removal of any building, structure or exterior architectural feature erected in violation

of said sections or any bylaw or ordinance adopted under said sections . . . .'

"Section 7-147h also allows for fines against the property owner and for the commission to collect its court costs and fees in pursuing such enforcement actions." *Historic District Commission* v. *Sciame*, supra, 140 Conn. App. 212–13 n.3.

[4] "The court struck both counts of the counterclaim and four of the five special defenses the commission challenged in its motion to strike." *Historic District Commission* v. *Sciame*, supra, 140 Conn. App. 213 n.4. That appeal challenged only the order striking the two count counterclaim. Id.

[5] The court explained: "Because of the good faith dispute over the appropriate interpretation of the [commission's] order the court declines to impose fines for noncompliance with the [commission's] order."

[6] On October 3, 2012, the commission filed a motion for contempt, seeking compliance with the court order, sanctions against the defendants in the amount of $1000 per day for each day of noncompliance, and legal fees, costs, and expenses. The commission withdrew this motion on October 31, 2012.

[7] The court determined that the commission was entitled to $48,847.50 in attorney's fees, "$41,511.25 [of] which were incurred in connection with prosecuting this action and $7336.25 in defending the appeal taken by the defendants concerning the counterclaims." The court further awarded $1807.37 in costs and expenses.

[8] Our Supreme Court, in *Gentry* v. *Norwalk*, 196 Conn. 596, 607, 494 A.2d 1206 (1985), considered the historic preservation statutes in the context of voting power related to the establishment of historic preservation districts. The court also discussed other provisions of the statutory scheme, noting: "The statute, consistent with its historic preservation purpose, provides the bases for close control and supervision of the buildings and areas in established historic districts. An enforcement procedure, including monetary fines, is set forth for violations of the statute, of any action or ruling of an historic district commission or of any regulation or ordinance properly adopted." Id. We note that our Supreme Court characterized the provision at issue as a means of enforcement rather than as a punitive measure.

[9] General Statutes § 8-12 provides in relevant part: "The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . shall be fined not less than ten dollars or more than one hundred dollars for each day that such violation continues."

[10] In *Lostritto*, the court determined that compliance with a 120 day time limitation for filing an apportionment complaint was mandatory. *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 26. While the court did discuss the legislature's use of both "shall" and "may" in the applicable statute, this distinction was not the only basis upon which the *Lostritto* court relied. The court noted other considerations, including that another subsection further reinforced the determination that the time limitation was mandatory, because it stated that "[t]his section *shall be the exclusive means* by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action." (Emphasis in original; internal quotation marks omitted.) Id., 20–21. The court further noted: "Despite the legislature's apparent intent to employ mandatory language, we are mindful that the word 'shall' is not dispositive on the issue of whether a statute is mandatory." Id., 22. The court articulated "another factor," whether the time limitation was procedural or substantive. Id. In reviewing the court's construction of the provision at issue in *Lostritto*, it is evident that the court did not rely solely on the legislature's use of both shall and may, but rather noted the use of both terms as one consideration. See also *Jones* v. *Civil Service Commission*, 175 Conn. 504, 509, 400 A.2d 721 (1978) (use of terms "shall" and "may" is "*a factor* that evidences affirmative selectivity of terms with specific intent to be distinctive in meaning" [emphasis added]).

[11] General Statutes § 8-12 provides in relevant part: "If any building or structure has been erected, constructed, altered, converted or maintained . . . in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction . . . *may* institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building . . . ." (Emphasis added.)

[12] We note that Judge Aurigemma's ruling on the commission's motion

for attorney's fees did use the term "violator" a number of times in describing the public policy reasons in support of awarding attorney's fees in cases like this one. The court stated: "There are several important public policy reasons for allowing attorney's fees in cases such as the present one. First, it is unfair to the taxpayers to impose the costs of successful enforcement proceedings on them rather than upon the *violator*. As with inland wetland enforcement actions, the intent of the attorney's fees provision in the enforcement statute is to remedy *violations* and to place the financial burden upon the *violator*. . . . Moreover, allowing attorney's fees in these cases creates an incentive for *violators* to come into compliance." (Citation omitted; emphasis added; internal quotation marks omitted.)

[13] In their counterclaim, the defendants alleged: "[The commission] has brought the instant action in a further attempt to intimidate, harass and annoy the [defendants] into complying with [its] unfounded demands." In count one, the defendants additionally alleged: "In bringing the instant action, [the commission] has acted in excess of the powers conferred by . . . General Statutes § 7-147a et seq. and the Regulations."

————————————————————